EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Zoraida Martínez Román, Saudy Leilany Hernández Colón y Jessenia Ayala Maldonado<br><br>        Recurridos<br><br>              v.<br><br>Estado Libre Asociado de Puerto Rico, Departamento de la Familia, Administración para el sustento de menores (A.S.U.M.E.)<br><br>        Peticionarios | 2009 TSPR 176<br><br>177 DPR _____ |

Número del Caso: CT-2009-6

Fecha: 20 de noviembre de 2009

Abogados de la Parte Peticionaria:

        Lcdo. Eliezer Aldarondo Ortiz
        Lcda. Rosa Campos Silva
        Lcdo. Simone Cataldi Malpica
        Lcdo. Eliezer A. Aldarodo López

Abogado de la Parte Recurrida:

        Lcdo. Arcelio A. Maldonado Avilés II

Materia: Interdicto Preliminar, permanente y Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Martínez Román, Saudy Leilany Hernández Colón, Jesenia Ayala Maldonado

Recurridas

v.

Estado Libre Asociado de Puerto Rico, Departamento de la Familia, y Administración para el Sustento de Menores

Peticionarios

CT-2009-6

Decisión del Juez Asociado señor MARTÍNEZ TORRES y de la Jueza Asociada señora PABÓN CHARNECO, referente a moción de inhibición.

En San Juan, Puerto Rico, a 20 de noviembre de 2009.

La parte recurrida, representada por el Lcdo. Arcelio A. Maldonado Avilés II, solicita la recusación del Juez y la Jueza que suscriben por unas expresiones en la Opinión de Conformidad del Juez Asociado señor Rafael L. Martínez Torres en el caso Yiyi Motors v. E.L.A., res. el 14 de octubre de 2009, 2009 T.S.P.R. 159, 177 D.P.R. ___ (2009). Según la "moción de inhibición", dichas expresiones, según reproducidas e interpretadas en un editorial del periódico El Nuevo Día de 2 de noviembre de 2009, le crean a las recurridas "la preocupación fundada, genuina y legítima de que los aludidos Jueces de este Tribunal Supremo, vayan a adjudicar su caso a base

del criterio político partidista...". Moción de inhibición, pág. 7.

De lo único que no debe haber duda aquí es de que la preocupación que expresan las recurridas por conducto de su abogado, es infundada, no tiene base alguna en la realidad ni en la Opinión de Conformidad emitida en Yiyi Motors v. E.L.A., supra, y raya en el borde de la difamación.

Con respeto a las recurridas y su abogado, debemos señalarles que las expresiones en la Opinión de Conformidad son claras y no corresponden a la interpretación que les dio el editorialista ni la moción de recusación. Una mera lectura de esas expresiones basta para comprenderlas. Pero si eso no fuera suficiente, cualquier duda se despeja en un artículo del mismo rotativo, que las recurridas y su abogado no incluyeron como anejo ni al cual hacen referencia, publicado luego del editorial antes citado. En ese artículo, el Juez Asociado señor Martínez Torres explicó sus manifestaciones, en claro contraste con la tergiversación que repiten las recurridas y su abogado. Señaló el Juez Asociado señor Martínez Torres:

> Se ha dicho que yo escribí que las decisiones tienen que responder a un mandato electoral, y nada más lejos de la verdad. Lo que escribí quiere decir que hay unas discrepancias entre los miembros del tribunal y que eso es de esperarse en el sistema, porque cuando las ramas políticas nominan [a los Jueces del Tribunal Supremo] lo hacen a base de entender que el nominado responde a una filosofía jurídica general similar, pero no

pueden esperar que por eso, las decisiones del [T]ribunal le sean favorables. *Tribunal en fuego, La revista, El Nuevo Día, domingo, 8 de noviembre de 2009, pág. 6.*

En otras palabras, la Opinión de Conformidad hizo referencia a que lejos de significar una hecatombe, las diferencias de criterio en el Tribunal son naturales ante la presencia de nuevos integrantes con una filosofía judicial propia. Esos **nombramientos** son el resultado del mandato electoral dado al Gobernador y al Senado para llenar las vacantes existentes en el Tribunal Supremo. Ese es nuestro sistema constitucional y no hay porqué desmerecerlo.

De ahí se ha saltado equivocadamente a hacer el siguiente silogismo: (a) Los nuevos Jueces llegaron al Tribunal Supremo luego de su nombramiento por las ramas políticas del gobierno. (b) Los incumbentes en las ramas políticas tienen esa facultad producto del resultado de las elecciones generales. (c) Por lo tanto, las decisiones de los nuevos integrantes del Tribunal van a responder al resultado electoral.

Semejante barbaridad es antijurídica y errónea, y no corresponde a lo que se expresó en la Opinión de Conformidad de Yiyi Motors v. E.L.A., supra. De hecho, en ese caso la decisión fue en contra del Gobierno.

Las **decisiones**, a diferencia de los nombramientos, responden a los hechos y el derecho. Se ajustan a la conciencia libre e independiente del juez y no a los deseos de los políticos. Se emiten con total

imparcialidad e independencia de criterio judicial, con absoluta fidelidad a la Constitución y las leyes, y de acuerdo a los hechos que están ante el Tribunal.

El buen abogado busca siempre la fuente original, que en este caso es la Opinión de Conformidad, y no las interpretaciones pedestres que otros le puedan dar. Conviene aclarar, entonces, para beneficio y tranquilidad de las partes y del Pueblo en general, la teoría democrática detrás de las expresiones que le "preocupan" a la parte recurrida y su abogado.

Al respecto, el Juez Asociado señor Martínez Torres dictó una charla el lunes, 16 de noviembre de 2009, ante los estudiantes de la Pontificia Universidad Católica, en Ponce, y allí abundó sobre el tema que nos ocupa:

> Por supuesto, una vez ocupan su cargo, los jueces en nuestro sistema tienen total independencia para decidir. Esa independencia judicial significa que el juez va a resolver conforme con su conciencia, y a base de la ley y el derecho, sin dejarse influenciar por los políticos, los cabilderos, por el resultado de las elecciones, los comentarios en la prensa ni por las manifestaciones callejeras. El proceso de nombramiento, en cambio, es distinto.

> Los jueces son elegidos y nominados por el Primer Ejecutivo; luego, son confirmados por el Senado. Tanto el Primer Ejecutivo como los senadores son políticos. Tienen ideas forjadas de cuál debe ser el rol de los tribunales y esas ideas las comparten con la mayoría del pueblo que los eligió. Por ejemplo, pueden entender que los tribunales deben ser más o menos lenientes al dictar sentencias penales; que deben ser más activos o por el contrario, más deferentes con las agencias administrativas; que deben ser más expansivos o en cambio, más recatados al interpretar las garantías constitucionales de los individuos frente al gobierno. Todas esas actitudes

jurídicas —en esos y otros temas— forman la filosofía judicial del nominado y definirán su ejecutoria como Juez del Tribunal Supremo. Es decir, tenemos que reconocer, como dijo el Juez Cardozo, que "las grandes mareas y corrientes que absorben al resto de los hombres no alteran su curso para pasarle por el lado a los jueces".[1]

Por ende, al investigar candidatos al máximo tribunal, los políticos que los escogen evalúan todos esos factores. Buscan candidatos que compartan su filosofía de cómo debe comportarse el Tribunal Supremo. No es que busquen que determinados casos se resuelvan de cierta manera o que el Tribunal decida a favor del gobernante. Los políticos saben que más fácil sería hallar la mitológica olla repleta de oro al final del arcoíris. De lo que se trata es de moldear indirectamente el Tribunal Supremo con la visión judicial del Primer Ejecutivo, sea ésta activista o conservadora. Esa visión responde al pueblo, indirectamente, ya que los electores eligen sus gobernantes en la Rama Ejecutiva y el Senado, y les encomiendan la nominación y confirmación, respectivamente, de los Jueces del Tribunal Supremo. A ese proceso le he llamado el "flujo normal de la marea judicial en una democracia, producto indirecto del mandato del Pueblo expresado donde corresponde, en las urnas".[2]

Solamente una mente prejuiciada o de escasa cultura jurídica puede interpretar esa última frase como una advertencia de que los recursos ante este Tribunal se van a resolver conforme al resultado de las elecciones generales o a favor del Poder Ejecutivo.

Ante la patente incorrección de esa afirmación, rechazamos los fundamentos de la moción de inhibición.

---

[1] B.N. Cardozo, The Nature of the Judicial Process, New Haven, Yale Univ. Press, 1921, pág. 168.

[2] Yiyi Motors, Inc. v. E.L.A., res. el 14 de octubre de 2009, 2009 T.S.P.R. 159, 177 D.P.R. ___, ___ (2009), Opinión de Conformidad.

Las partes y sus abogados pueden estar seguras de que los suscribientes resolverán este caso con total independencia judicial, de acuerdo a los hechos y el derecho.

Ahora bien, los suscribientes tenemos que advertir para éste y casos ulteriores, que no vamos a permitir que la tergiversación de nuestras manifestaciones anteriores se utilice para tratar de evitar nuestra intervención en casos de alto interés público. No hay constancia alguna de prejuicio o ánimo prevenido de los suscribientes que impida nuestra intervención en este caso. Véase, e.g., Ramírez de Ferrer v. Mari Brás, 142 D.P.R. 941 (1997) (Decisión del Juez Asociado señor Corrada Del Río sobre moción de recusación). Si las recurridas y su abogado confían en que el derecho les favorece, no deben albergar preocupación alguna.

Tampoco vamos a permanecer callados ante la repetición o expansión del patrón de descrédito que denunciamos en la Opinión de Conformidad de Yiyi Motors v. E.L.A., supra, que motivaron las expresiones que son objeto de la moción de inhibición. "Al advenir a esta noble profesión, al juez no puede considerársele como que renuncia a defender su honra y dignidad, así como su título y trabajo." In re Colton Fontán II, 154 D.P.R. 776, 798 (2001) (Decisión del Juez Asociado señor RIVERA PÉREZ sobre moción de inhibición). Conviene recordar que señalar que un juez aparenta estar parcializado o

prejuiciado, sin motivos fundados para que un observador imparcial pueda creerlo, es una alegación que siempre hemos censurado, rechazado y desalentado. Id., pág. 799; In re Cardona Álvarez, 116 D.P.R. 895 (1986). La seria imputación de una apariencia razonable de parcialidad por un juez tiene que basarse en hechos objetivos y no en opiniones editoriales y recortes de periódico.

Concluimos que un observador objetivo, razonable y prudente, con conocimiento específico y detallado de las expresiones hechas en la Opinión de Conformidad de Yiyi Motors v. E.L.A., supra, no tendría base razonable ni motivo fundado para dudar de la imparcialidad de los suscribientes. In re Colton Fontán II, supra, pág. 799. La base para la "preocupación" de las recurridas y su abogado no es la Opinión de Conformidad sino la interpretación errónea que otros han hecho de ella. Nuestro sistema exige mayor cultura jurídica de parte de los abogados y más ponderación al recurrir al mecanismo de la recusación de jueces.

> El abogado, en el descargo de su responsabilidad como representante de su cliente, debe actuar sin temor cuando tiene motivos fundados para solicitar la inhibición de un juez; sin embargo, debe ser cauteloso y prudente, sobre todo, cuando el motivo de la inhibición que se invoca como causa es conducta del juez alegadamente reñida con la ética judicial, y mientras más grave sea su imputación, mayor debe ser su ponderación de las bases de la misma. *In re Colton Fontán II, id., pág. 798.*

En fin, por todo lo expuesto, se declara sin lugar la moción de inhibición.

Publíquese.




RAFAEL L. MARTÍNEZ TORRES      MILDRED G. PABÓN CHARNECO
     Juez Asociado                   Jueza Asociada