EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Hiram I. Pérez Soto<br>(TS-4383) | 2018 TSPR 69<br><br>200 DPR ____ |

Número del Caso:  CP-2015-20


Fecha: 24 de abril de 2018


Comisionada Especial:
      Lcda. Ygrí Rivera de Martínez


Abogado del querellado:
por derecho propio


Oficina del Procurador General:


              Lcdo. Luis Román Negrón
              Procurador General


              Lcda. Minnie H. Rodríguez López
              Procuradora General Auxiliar


Materia:  Conducta Profesional – La suspensión será efectiva el 26 de abril de 2018, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hiram I. Pérez Soto
(TS-4383)                              CP-2015-20

PER CURIAM

En San Juan, Puerto Rico, a 24 de abril de 2018.

El 12 de diciembre de 2013, el Lcdo. Enrique Alcaraz Micheli presentó una queja ética contra el Lcdo. Hiram I. Pérez Soto. En ella le imputó conducta antiética en el transcurso de un pleito relacionado con la partición de la herencia del padre del licenciado Pérez Soto. Alegó que el licenciado Pérez Soto estableció un patrón de presentar quejas contra todo abogado o juez que discrepa de él, y que utiliza lenguaje ofensivo contra los abogados de las otras partes. Evaluada la queja, y con el beneficio de los informes de la Oficina del Procurador General y de la Comisionada Especial, concluimos que el licenciado

Pérez Soto violó los Cánones 9, 12, 15, 17, 29, 35 y 38 del Código de Ética Profesional, infra.

I

Por medio de testamento, el Sr. Hiram Pérez Beltrán, padre del licenciado Pérez Soto, designó como albacea, administradora judicial y contadora partidora a su hija, la Sra. Enid Pérez Soto. El 6 de noviembre de 2006, luego de la muerte del señor Pérez Beltrán, la señora Pérez Soto solicitó la expedición a su favor de las cartas testamentarias. Al año siguiente, la señora Pérez Soto y el Sr. José Reinaldo Cordero Soto, designado en el testamento como sustituto de la señora Pérez Soto, presentaron una moción conjunta en la que la señora Pérez Soto renunció a los cargos y solicitó la expedición de nuevas cartas a favor del señor Cordero Soto. El licenciado Pérez Soto presentó una moción para intervenir y oponerse al nombramiento. El Tribunal de Primera Instancia resolvió que el nombramiento procedía. Inconforme, el licenciado Pérez Soto recurrió de ese dictamen, pero el Tribunal de Apelaciones denegó revisar.

Posteriormente, el licenciado Pérez Soto presentó por derecho propio una demanda sobre partición de herencia y anulación de ciertas transacciones relacionadas con el caudal hereditario de su padre. El Tribunal de Primera Instancia declaró no ha lugar la solicitud de representación por derecho propio. El Tribunal de Apelaciones denegó revisar y destacó en su resolución que la conducta de

protagonismo desplegada por el licenciado en el litigio "obstaculizó la litigación ordenada" y mostró "un obvio envolvimiento emocional con sus reclamaciones y en contra de sus parientes, quienes considera lo persiguen familiarmente". El licenciado Pérez Soto presentó ante nos una petición de *certiorari* para revisar la determinación del Tribunal de Apelaciones. Proveímos no ha lugar, acto que para el licenciado "conllev[ó] una violación a la norma de Stare Decisis", según expresó en una carta dirigida al entonces Juez Presidente, Hon. Federico Hernández Denton.

A pesar de que la determinación advino final y firme, el licenciado Pérez Soto continuó compareciendo por derecho propio en el pleito. Además, inició un patrón de presentar quejas éticas y recusaciones contra los abogados y jueces que intervinieron de forma adversa a sus intereses en el pleito. Como consecuencia, el licenciado Alcaraz Micheli, quien representaba a otra parte en el pleito, presentó contra el licenciado Pérez Soto una queja ética que remitimos a la Oficina del Procurador General para investigación e informe.

Procedemos a señalar, según surgen del informe de la Oficina del Procurador General y sus anejos, las quejas éticas y recusaciones que el licenciado Pérez Soto presentó:

1. Queja contra la Hon. María Adaljisa Dávila Vélez, por supuesto prejuicio y parcialidad al denegar su solicitud de representación por derecho propio. Se ordenó el archivo de la queja. La Hon. Sonia I. Vélez Colón, entonces Directora Administrativa de los

Tribunales, concluyó que la juez no incurrió en violación alguna y enfatizó que su Oficina no podía intervenir con decisiones judiciales en ausencia de violaciones éticas. El Hon. Hernández Denton, entonces Juez Presidente, confirmó la determinación de archivar la queja. Expresó en su resolución que las imputaciones del licenciado Pérez Soto "carecen de base fundada" y que "no se desprende del expediente del caso fundamento alguno para el inicio de un proceso disciplinario" contra la juez.

2. Queja contra el Hon. Israel Hernández González, a quien le fue asignada la demanda de herencia luego de que la juez Dávila Vélez se inhibiera como consecuencia de la queja presentada en su contra. El licenciado Pérez Soto expresó inconformidad con ciertas determinaciones judiciales tomadas por el juez Hernández González y arguyó que este actuó de forma negligente y parcializada. La Directora Administrativa de los Tribunales ordenó el archivo de la queja. Aclaró que las determinaciones judiciales, aun cuando fuesen erróneas, no constituyen base suficiente para una queja a menos que se demuestre que hubo abuso intencional de la discreción judicial. El Juez Presidente confirmó y ordenó el archivo definitivo de la queja. Aunque advirtió que la solicitud de reconsideración fue presentada tardíamente, se expresó sobre los méritos

de la queja. Señaló que la queja se limita a cuestionar las determinaciones judiciales del juez - y de otros jueces- y no a señalar conducta que constituya una violación ética. "[L]as determinaciones judiciales en controversia no son errores de tal magnitud que reflejen conducta impropia o favoritismo hacia un litigante […]".

3. Queja contra el panel del Tribunal de Apelaciones compuesto por la Hon. Emmalind García García, la Hon. Aleida Varona Méndez y la Hon. María del C. Gómez Córdova. El licenciado Pérez Soto adujo que los jueces del panel incurrieron en negligencia crasa y le ocasionaron daños al proceso judicial al desestimar su apelación sumariamente bajo el fundamento de que no la notificó a las partes dentro del término reglamentario porque la depositó en un correo privado. La Directora Administrativa de los Tribunales ordenó el archivo de la queja, porque se limitaba a impugnar una determinación judicial. El licenciado volvió a presentar la solicitud de reconsideración tardíamente y el Juez Presidente volvió a expresarse. Dijo que "el licenciado Pérez Soto se limita nuevamente a impugnar las determinaciones judiciales del referido panel del Tribunal de Apelaciones y de otros jueces que también han sido objeto de otras quejas presentadas por éste, y no a señalar conducta que constituya una violación

de los Cánones de Ética." Tanto la Directora Administrativa como el Juez Presidente señalaron que el remedio que tenía el licenciado Pérez Soto a su disposición era recurrir al foro apelativo correspondiente, como en efecto hizo, pero que la presentación de quejas era improcedente.

4. Recusación del panel del Tribunal de Apelaciones compuesto por la Hon. Emmalind García García, la Hon. Aleida Varona Méndez y la Hon. María del C. Gómez Córdova. El licenciado Pérez Soto indicó: "Tenemos base razonable para creer que el Apelativo al desestimar no lo realizó de buena fe o negligencia crasa […]. Lo realizó por prejuicio. Nos quejamos del Panel. El Juez Presidente es de opinión que por decisiones judiciales no se puede disciplinar a un Juez o Panel. Creemos que éste está equivocado […]. El Panel debió inhibirse de ver la Apelación luego de mi Queja y de que el Supremo lo revocase con una sutil crítica a la arbitrariedad de su decisión." Un panel especial declaró no ha lugar la moción de recusación. El panel especial entendió que no existía fundamento válido para la petición de inhibición, sino solo su clara insatisfacción con pronunciamientos del foro de instancia y del foro apelativo.

5. Queja contra el panel del Tribunal de Apelaciones compuesto por la Hon. Aida Nieves Figueroa, la Hon.

Carmen H. Carlos Cabrera y el Hon. Troadio González Vargas, por supuesta demora en atender un recurso. La Directora Administrativa ordenó el archivo de la queja y apercibió al licenciado de que la mera dilación no amerita que se acuda a la vía disciplinaria y de que del expediente no surgía conducta impropia por parte de estos jueces. El licenciado Pérez Soto presentó una moción de reconsideración que fue denegada por tardía. Además de la queja, el licenciado también presentó una solicitud de *mandamus* ante este Tribunal para que ordenáramos al panel resolver el caso en cuarenta y cinco días. De las veintidós páginas de la solicitud, tan solo unos pocos párrafos son dedicados a la figura del *mandamus* y a explicar por qué debía expedirse. El resto del documento va dirigido a relitigar asuntos ya resueltos y a tratar de convencer al tribunal del supuesto prejuicio de los jueces y de las mentiras y faltas de respeto de los demás abogados. Denegamos la petición de *mandamus*.

6. Queja contra el panel del Tribunal de Apelaciones compuesto por la Hon. Gretchen Coll Martí, la Hon. Nélida Jiménez Velázquez y la Hon. Ivelisse Domínguez Irizarry. El licenciado Pérez Soto alegó tener base suficiente para creer que el panel actuó con prejuicio y parcialidad al confirmar una sentencia del foro primario. La Directora Administrativa de

los Tribunales concluyó que la queja versaba sobre una determinación judicial que se encuentra fuera de su jurisdicción disciplinaria y ordenó su archivo. El licenciado solicitó reconsideración tardíamente al Juez Presidente, quien advirtió que perdió jurisdicción para revisar la queja. Sin embargo, expresó que la queja vuelve a impugnar los fundamentos jurídicos del panel así como las determinaciones de otros jueces que también han sido objeto de quejas del licenciado. Añadió que el licenciado Pérez Soto tampoco podía plantear que los errores del panel fueran de gran magnitud cuando él mismo alegó que la controversia era novel. Finalmente, reiteró que el proceso disciplinario no es un mecanismo apelativo y ordenó el archivo definitivo.

7. Recusación del Hon. Ricardo G. Marrero Guerrero, quien desestimó una demanda del licenciado Pérez Soto para que se decretara la nulidad de dos sentencias parciales adversas. En esa sentencia, el juez Marrero Guerrero también impuso al licenciado Pérez Soto el pago de costas de litigio y de tres mil dólares en honorarios por su temeridad. El Hon. Miguel P. Cancio Bigas declaró no ha lugar la solicitud de recusación. Explicó que nada en el expediente sustenta la alegación de prejuicio, pues el juez Marrero Guerrero resolvió a la luz del derecho que entendió aplicable.

Ante este panorama, el licenciado Pérez Soto tenía los mecanismos de revisión y apelación disponibles, pero no el de recusación.

8. Recusación del Hon. Antonio R. Negrón Villardefrancos, luego de que este juez le requiriera al licenciado Pérez Soto no actuar como su propio abogado. El Hon. Rafael Rodríguez Olmo declaró no ha lugar la solicitud de recusación, por entender que el licenciado Pérez Soto no probó su alegación de prejuicio o parcialidad. El licenciado Pérez Soto recurrió de esta determinación al Tribunal de Apelaciones. Como acostumbra hacer, aprovechó su comparecencia ante el foro apelativo para relitigar asuntos ya adjudicados en el pleito de herencia y volver a quejarse sobre los supuestos insultos y conductas antiéticas de parte de los abogados de la otra parte y del prejuicio que entiende han desplegado los jueces que intervinieron en el caso. En lugar de dar razones concretas por las cuales el juez Negrón Villardefrancos debía ser recusado del caso, el licenciado Pérez Soto insistió en que un sinnúmero de sentencias dictadas en su contra son ilegales y están prejuiciadas. Todo eso era impertinente para atender el asunto de la recusación del juez Negrón Villardefrancos. El Tribunal de Apelaciones denegó el auto solicitado. Mencionó que el licenciado Pérez Soto desacató la directriz de no

participar por derecho propio y señaló que el envolvimiento personal del licenciado con el pleito le hizo difícil desempeñarse de forma desapasionada y profesional.

9. Recusación del Hon. Enrique Pérez Acosta, en la que el licenciado Pérez Soto expuso que el juez resolvió en su contra por estar influenciado por las quejas contra otros jueces. Según el licenciado Pérez Soto, el juez actuó con "compañerismo judicial equivocado y ceñido con la ética judicial". La Hon. Arlene De L. Selles Guerrini declaró no ha lugar la moción y resolvió, luego de escuchar la regrabación de la vista, que el juez Pérez Acosta no actuó con prejuicio contra el licenciado Pérez Soto y que el abogado tuvo la oportunidad de contrainterrogar a los testigos. También señaló que el juez tuvo que llamarle la atención al abogado en tres ocasiones por el lenguaje utilizado al decir que el albacea pretendía "perpetuarse en el poder". Se le apercibió de que si no estaba conforme con lo resuelto por el juez Pérez Acosta, el mecanismo apropiado para la revisión era la reconsideración, lo que el abogado también hizo.

10. Queja contra los licenciados Luis E. Laguna Mimoso, Enrique Alcaraz Micheli, Patricia Cordero Alcaraz, Edna E. Pérez Román, Eli Galarza Rivera y Fernando J. Gierbolini, quienes son abogados de las

otras partes en el litigio de herencia. Según el licenciado Pérez Soto, estos abogados no lo trataron con respeto y cortesía, lo mandaron a callar, lo insultaron e insistieron en que él no estaba emocional e intelectualmente capacitado para el pleito. El informe de la Oficina del Procurador General recomendó la desestimación de la queja. Destacó que ha sido precisamente el licenciado Pérez Soto quien ha obstaculizado los procedimientos. También señaló que es inaceptable que, mediante el procedimiento disciplinario, el licenciado Pérez Soto intente dilucidar la legitimidad de sus reclamos ante el foro primario en el pleito de herencia. Habiendo examinado el informe y la contestación del licenciado Pérez Soto, ordenamos el archivo de la queja.

11. Solicitud de descalificación de los licenciados Luis E. Laguna Mimoso, Enrique Alcaraz Micheli y Patricia Cordero Alcaraz. La Hon. María del Carmen Garriga Morales la declaró no ha lugar. Aunque reconoció que el lenguaje utilizado por el licenciado Laguna Mimoso durante una toma de deposición fue fogoso, concluyó que no fue tan impropio como para justificar descalificarlo de un pleito tan desarrollado. Además, indicó que parece haber sido el propio licenciado Pérez Soto quien propició esa dinámica durante la deposición.

El informe de la Oficina del Procurador General también reseñó varias expresiones impropias que el licenciado Pérez Soto ha realizado en sus escritos. Proveemos algunos ejemplos: "No veo c[ó]mo el Panel podía decidir de esa manera y respetarse a sí mismo". Pág. 14 de Petición de *certiorari* presentada el 31 de marzo de 2014 en KLCE 2014-041. "[El Juez] dio una opinión consultiva nula. El Tribunal dice que no fue consultiva. Si no fue consultiva, [¿]que fue?" Pág. 7 de la Moción de reconsideración y de inhibición presentada el 12 de noviembre de 2013 en KAC2012-0840. "El tercer Juez del TPI siguió actuando para causarme daño". Íd., pág. 20. "Los abogados contrarios conociendo el problema en que yo me metí con los jueces por las quejas consistentemente realizan planteamientos frívolos, mintiendo, sabiendo no van a ser sancionados." Íd., pág. 25. "El caso de la mentira y tergiversación es la práctica de los abogado[s] de Cordero Soto […]. Estoy decidido [a] acabar con esta práctica […]. Yo nunca he mentido, que lo prueben. Yo puedo probar que los abogados de Cordero Soto han mentido repetidamente, no se respetan a sí mismos ni a los Tribunales de Justicia". Pág. 3 de la Moción en contestación a réplica de moción de reconsideración presentada el 20 de noviembre de 2013 en KAC2012-0840. "[El Juez] dijo otras cosas falsas en su decisión […]. No se leyó los documentos del apéndice […] se dedicó a parafrasear los escritos de los apelados conteniendo información incorrecta […]". Pág. 7 de la Carta

del Lcdo. Hiram Pérez Soto al Hon. Federico Hernández Denton, 12 de junio de 2009.

Estas expresiones son representativas del tono que el licenciado generalmente mantiene en sus escritos. Con frecuencia, tildó a los abogados de la parte contraria de viles, mentirosos y calumniadores; dijo que el tribunal decidió de forma negligente y sin estudios jurídicos competentes, y que existe "compañerismo judicial" entre los jueces.

La Oficina del Procurador General concluyó en su informe que existe evidencia clara, robusta y convincente de que el licenciado Pérez Soto pudo haber violado los Cánones 9, 12, 15, 17, 29, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Conforme al informe rendido, le ordenamos a la Procuradora General presentar la querella correspondiente. Posteriormente, nombramos a la Hon. Ygrí Rivera de Martínez para que, en presencia de las partes y en calidad de Comisionada Especial, recibiera prueba, celebrara vistas y nos sometiera un informe con las determinaciones de hecho y las recomendaciones que estimara pertinentes. Concluyó que todos los cargos formulados por la Procuradora General se probaron. Por las razones que presentamos a continuación, estamos de acuerdo.

II

*A. Cánones 9 y 12*

Los cargos I y II imputaron una violación de los Cánones 9 y 12 del Código de Ética Profesional, supra, por los ataques injustificados contra los jueces que intervinieron en los asuntos relacionados con la herencia del padre del abogado promovido, lo que causó dilaciones innecesarias en la solución rápida del asunto.

El Canon 9 exige de los abogados "observar para con los tribunales una conducta que se caracterice por el mayor respeto" y "desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales". Este deber "incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observan una actitud cortés y respetuosa". Íd. Hemos expresado que la crítica judicial oportuna es efectiva para que los abogados contribuyan a que los tribunales cumplan sus funciones, pero debe hacerse con respeto y deferencia. In re Crespo Enríquez, 147 DPR 656, 662-663 (1999). Un abogado no debe hacer imputaciones sobre el obrar de un juez que no están avaladas con evidencia contundente e indubitada. Íd., pág. 663. Un abogado no debe traspasar los linderos de la verdad en el curso de su crítica, porque una crítica falsa, injustificada y viciosa obstaculiza la imparcial y recta administración de la justicia. In re Andréu Ribas, 81 DPR 90, 120 (1959). Así, es censurable la conducta del abogado que constantemente

recurre al apuntamiento de que el tribunal actuó con prejuicio, pasión y parcialidad, sin sustanciarlo o sin motivos fundados para así creerlo. In re Cardona Álvarez, 116 DPR 895, 907 (1986). Es importante recordar que actuar con pasión y prejuicio supera el mero error del juzgador; se trata del incumplimiento esciente del deber de honradez de conciencia. Cordero v. Rivera, 74 DPR 586, 609 (1953).

Por ello, no justificamos el lenguaje oral o escrito que pone en entredicho la honestidad y ecuanimidad del juez, aunque su actuación judicial sea incorrecta y posteriormente revocada. In re Pagán, 116 DPR 107, 111-112 (1985). "Las discrepancias con los dictámenes judiciales no [son] licencia para el lenguaje impropio e hiriente". Íd., pág. 111.

Como regla general, los jueces no pueden ser sometidos a un procedimiento disciplinario meramente por aplicar o interpretar erróneamente los hechos o el derecho en un caso particular. Véanse In re Velázquez Hernández, 162 DPR 316 (2004); In re Cruz Aponte, 159 DPR 170 (2003). "[U]n error de juicio no equivale a negligencia ni menosprecio absoluto de la ley. Al cometerse tales errores, la parte adversamente afectada tiene a su haber el procedimiento ordinario de revisión judicial." In re Hon. Díaz García, T.P.I., 158 DPR 549, 557-558 (2003). "El comportamiento judicial que de alguna manera afecte los derechos de un […] litigante puede llevarse al récord para la acción correctiva que proceda por

un tribunal superior, a tenor con lo que deba ser un juicio imparcial y justo". Pueblo v. Susoni, 81 DPR 124, 154 (1959).

No es suficiente fundamentar que se aplicó erróneamente el derecho para demostrar que la determinación judicial iba dirigida a favorecer indebidamente a una de las partes, ni tampoco para reflejar conducta impropia o favoritismo hacia un litigante particular. Según la Regla 3 de Disciplina Judicial, 4 LPRA Ap. XV-B, el alcance del referido proceso se circunscribe a supuestos en los cuales se le impute al juez haber violado la ley, los Cánones de Ética Judicial, el Código de Ética Profesional, las órdenes y normas administrativas aplicables, o haber incurrido en negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales. Solo se configura una violación ética si se presenta evidencia de que el error cometido constituyó un abuso intencional de la discreción judicial, o un error que por su magnitud refleje conducta impropia o favoritismo hacia un litigante o abogado particular. In re Hon. Díaz García, T.P.I., supra; Feliciano Rosado v. Matos, Jr., 110 DPR 550 (1981).

Sin duda alguna, el licenciado Pérez Soto violó el Canon 9. Sus imputaciones contra jueces, además de utilizar un lenguaje irrespetuoso, demostraron ser todas injustificadas. El licenciado no sostuvo con evidencia contundente sus alegaciones de prejuicio, sino que recurrió a ese planteamiento casi como autómata cada vez que un juez resolvió en su contra.

Por otra parte, el Canon 12 establece que

[e]s deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución.

Como corolario del deber plasmado en este canon, la conducta de un abogado no debe obstaculizar la resolución de un caso. Sin embargo, ni el informe de la Procuradora General ni el informe de la Comisionada Especial detallan maneras en que el patrón del licenciado Pérez Soto de presentar quejas atrasó el pleito de herencia. El trámite procesal de las quejas éticas presentadas por el licenciado Pérez Soto ocurrió al margen del pleito de herencia. Por otro lado, en relación con las solicitudes de recusación e inhibición contra jueces, que requieren el nombramiento de paneles especiales para su atención, resolvemos que el licenciado Pérez Soto violó el Canon 12, puesto que detuvo el trámite del pleito de herencia en múltiples ocasiones al presentar recusaciones inmeritorias.

B. *Canon 15*

El cargo III imputó violación del Canon 15 del Código de Ética Profesional, supra, por incumplimiento con la obligación de observar un trato respetuoso y considerado hacia la parte adversa y no utilizar los procedimientos legales de manera irrazonable o con el fin de hostigar a la parte contraria.

El Canon 15 impone a los abogados el deber de respeto hacia las partes contrarias. También dispone que será impropio utilizar los procedimientos legales en forma irrazonable o con el fin de hostigar a la parte contraria. Resolvemos que el licenciado Pérez Soto violó el Canon 15 al presentar continuamente mociones innecesariamente extensas, repetitivas e infundadas, sobre asuntos ya dirimidos con carácter de final y firme. Su proceder no fue razonable ni respetuoso, y raya en el hostigamiento a las partes contrarias. También reprobamos la metodología opresiva de interrogación que usó el licenciado durante las vistas de este proceso disciplinario, al requerir a los testigos leer en voz alta la totalidad de documentos extensos para luego hacer preguntas sobre detalles específicos que estos no podían recordar.

### C. Canon 17

El cargo IV imputó violación del Canon 17 del Código de Ética Profesional, <u>supra</u>, que prohíbe la presentación de pleitos injustificados, debido al patrón reiterado de presentar quejas inmeritorias contra jueces y abogados.

En esencia, el Canon 17 busca evitar la litigación injustificada. Establece que la comparecencia de un abogado ante un tribunal equivale a una afirmación de que el caso de su cliente es uno digno de la sanción judicial. Cuando un abogado firma una alegación, certifica que la información en ella está bien fundada, según su mejor conocimiento.

La prueba demostró que el licenciado presentó una gran cantidad de quejas y recusaciones que carecían de mérito. A pesar de que sus argumentos fueron refutados repetidas veces, el licenciado Pérez Soto insistió en ellos. La presentación de quejas y mociones frívolas promueve el litigio injustificado y utiliza innecesariamente los recursos de los tribunales y de la Oficina del Procurador General.

*D. Canon 29*

El cargo V imputó violación del Canon 29 del Código de Ética Profesional, supra, al conducirse de forma personalista y con animosidad contra la parte contraria en la tramitación del caso, obstaculizando con ello la solución de este. Dicha conducta quedó evidenciada en las quejas éticas que el licenciado presentó contra los abogados de la parte adversa.

El Canon 29 dispone que "[d]ebe evitarse escrupulosamente toda cuestión personal entre los abogados". También prohíbe que se hagan imputaciones falsas que afecten el buen nombre y reputación de otro compañero de la profesión. La violación de este canon es evidente, pues fueron múltiples las imputaciones falsas hechas por el licenciado, que podían afectar la reputación de todos los abogados de la parte contraria, de los jueces interventores y de las abogadas de la Oficina del Procurador General que investigaron la queja. Al realizar estas imputaciones, el

licenciado Pérez Soto insistió en que los otros abogados y jueces actuaron con prejuicio y mintieron vilmente. El licenciado hizo caso omiso al hecho de que todos sus reclamos fueron archivados. Su obstinación al respecto es indicio de cuestiones personales contra estos abogados y de menosprecio a la reputación y buen nombre de ellos.

   *E. Cánones 35 y 38*

   Los cargos VI y VII imputaron violación de los Cánones 35 y 38 del Código de Ética Profesional, supra, al incumplir con los deberes de exaltar el honor y la dignidad de la profesión, y de no incurrir en conducta impropia o apariencia de la misma. El cargo condena que, con su patrón de presentar quejas constantemente, el licenciado Pérez Soto demostró una desviación de su deber de exaltar el honor de la profesión, ya que no fue veraz ni sincero al hacer imputaciones carentes de prueba que las sostengan.

   El Canon 35 dispone que la conducta de cualquier miembro de la profesión legal debe ser sincera y honrada frente a clientes, compañeros abogados y tribunales. In re Molina Oliveras, 188 DPR 547, 554 (2013). Utilizar medios que sean inconsistentes con la verdad o inducir al juzgador a error por medio de una falsa relación de los hechos o del derecho, no es sincero ni honrado. También es impropio distorsionar las citas jurídicas para transmitir una idea distinta a la que el verdadero contexto establece.

La conducta del licenciado Pérez Soto no es sincera ni honrada. Los hechos que relató en las quejas que presentó no merecieron credibilidad por parte de ninguno de los juzgadores que los evaluaron. Tildó de "base razonable" hechos que no daban lugar a más que una mera sospecha. El licenciado Pérez Soto también argumentó que el Juez Presidente tomó medidas disciplinarias directa o indirectamente contra los jueces de quienes él se quejó. Así pretendió justificar las múltiples quejas que presentó contra estos. Sin embargo, ignoró que todas las resoluciones en que el Juez Presidente ordenó el archivo definitivo de las quejas, estuvieron acompañadas de expresiones desacreditando el proceder del licenciado. Esto no es sincero ni honrado.

Sin embargo, es con su relación del derecho que sin lugar a dudas ha pretendido inducir a error a los juzgadores. Con demasiada frecuencia, el licenciado Pérez Soto descansó en jurisprudencia inexistente, o distorsionó la existente, para argumentar puntos de derecho inmeritorios.

El Canon 38 dispone que un "abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales […]". Una conducta viola este canon cuando es contraria a los valores principales de la profesión -la dignidad y el honor- y afecta las condiciones morales del abogado, de manera que lo hace indigno de pertenecer al foro. In re Rodríguez López, 196 DPR 199, 208 (2016); In re

Reyes Coreano, 190 DPR 739, 758 (2014). El patrón de conducta del licenciado Pérez Soto viola este canon. El abogado se ha esforzado en promover su postura en el pleito hereditario, incluso en detrimento de la dignidad y las buenas prácticas de la profesión. Lejos de estar dispuesto a incurrir en sacrificios personales cuando sea necesario para exaltar el honor de la profesión, la obstinación del licenciado Pérez Soto demuestra que no pretende ceder nada.

Vale también señalar que el Canon 38 fomenta que los abogados, en beneficio de la profesión, denuncien valientemente cualquier conducta corrupta y deshonrosa de otro colega o funcionario judicial. La conducta del licenciado Pérez Soto queda fuera de esta exhortación. Los distintos juzgadores de las quejas presentadas por el licenciado Pérez Soto determinaron que estas quejas no iban dirigidas a corregir conducta corrupta o deshonrosa. Tampoco las denuncias promovían un beneficio a la profesión. El licenciado Pérez Soto repetía los argumentos que perdió en el litigio, como una nueva oportunidad para adelantar sus intereses en el caso.

III

Los argumentos del licenciado Pérez Soto en respuesta a las imputaciones en su contra merecen atención especial. Alega que el pleito hereditario se tornó hostil contra él a partir de la inhibición de la juez Dávila Vélez como resultado de la queja que él presentó en contra de la

magistrado. Según él, los abogados de las otras partes fomentaron la hostilidad de los jueces contra él, con sus referencias constantes a las quejas que él presentó contra los jueces. Así, aduce que el compañerismo entre los jueces prejuzgó el pleito hereditario en su contra. De acuerdo al licenciado Pérez Soto, los abogados de las otras partes aprovecharon el prejuicio en su contra para presentar mociones frívolas e incorrectas en Derecho. Como resultado, sostiene que se dictaron muchas sentencias ilegales.

El licenciado Pérez Soto asevera que se vio obligado a presentar quejas y recusaciones porque los recursos apelativos no rendían frutos o los jueces que los atendían también estaban prejuiciados. El licenciado Pérez Soto sostiene que, según la norma de Lizarríbar v. Martínez Gelpí, 121 DPR 770 (1988), la juez Dávila Vélez no tenía discreción para descalificarlo si él se comportaba con decoro y respeto. Aunque el sentido común -y no la norma de Lizarríbar, íd.,- dicta que una persona que se comporte de manera irrespetuosa no podrá representarse por derecho propio, actuar con respeto y decoro no garantiza que se conceda este tipo de representación ni limita la discreción del juez evaluador. Se requiere establecer un balance entre los intereses de las partes y la eficiencia en la administración de la justicia, según las circunstancias particulares del caso. Entre otros factores, se evalúa el efecto que tendría la interrupción de los procedimientos. En este caso, el Tribunal de Apelaciones expresó que el licenciado Pérez Soto obstaculizó la

litigación ordenada y mostró una carga emocional con sus reclamaciones y en contra de sus parientes. Dadas las circunstancias, fue razonable que denegaran la solicitud de representación por derecho propio.

El licenciado Pérez Soto alegó que tiene el derecho y el deber de presentar quejas mientras sea con base razonable y respeto; que eso es parte de sus derechos civiles y su libertad de expresión. Aseveró que todas sus quejas cumplieron con la norma de In re Cardona Álvarez, supra, que estaban protegidas constitucionalmente y que lo contrario sería censura previa. Sin embargo, en In re Cardona Álvarez, supra, reprobamos la conducta de un abogado que "acostumbra[ba] hacer imputaciones de prejuicio y parcialidad a los Jueces cada vez que carec[ía] de fundamentos en derecho para sostener sus alegaciones". Íd., pág. 900. Para evaluar la legitimidad de las imputaciones que un abogado hace contra un juez, consideramos si el abogado: (a) aunque equivocado, creía en la validez de las imputaciones; (b) tenía motivos fundados o causa probable para creer en su veracidad, aunque los hechos no fueran ciertos, y (c) no hizo la imputación maliciosamente con el propósito de denigrar al tribunal. Íd., pág. 906. También, expresamos que un abogado debe evitar "el empleo de imputaciones y de hechos extraños o inútiles al asunto y, sobre todo, las alegaciones contrarias a la verdad o desprovistas de una **razonable presunción de exactitud**". Íd., pág. 897. Por eso, repudiamos toda imputación que no esté

respaldada por **evidencia competente** y **motivos fundados** y que sea tendente a degradar la dignidad, honorabilidad e integridad de los tribunales o sus funcionarios. Íd., págs. 906-907. "Nada más destructivo del justo balance de la conciencia judicial, que la crítica **injustificada y viciosa**". Íd., pág. 905.

A la luz de nuestros pronunciamientos en In re Cardona Álvarez, íd., las quejas que el licenciado Pérez Soto presentó no son meritorias. Solo redundaron en molestias innecesarias y en la utilización injustificada de los recursos de investigación del Estado. Aunque es apropiado, e incluso un deber, que todo abogado señale situaciones que puedan comprometer la imparcialidad que debe caracterizar a los procesos judiciales, quien entienda que un juez ha actuado con pasión, prejuicio o parcialidad, debe acudir a un foro superior y

> sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia. El nivel de pasión, prejuicio o parcialidad que hace falta demostrar para impugnar exitosamente las determinaciones del foro primario sobre los hechos varía de caso a caso, pero no es necesario probar una violación al Canon XX de Ética Judicial. Más bien, el estándar se asemeja al de la Regla 63 de Procedimiento Civil pues, más que una sanción disciplinaria contra el juez o la jueza, lo que se pretende lograr es que la controversia ante la consideración del Poder Judicial sea adjudicada con imparcialidad. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 775-776 (2013).

En Dávila Nieves v. Meléndez Marín, íd., concluimos que el juez de instancia obró con prejuicio, pero no

disciplinamos al juez, sino que ordenamos un nuevo juicio ante otro magistrado.

El licenciado Pérez Soto también sostiene que el Juez Presidente nunca lo sancionó por presentar las quejas. Este argumento lo repite en casi todos sus escritos. Sugerir que hizo lo correcto por el hecho de que el Juez Presidente no lo disciplinó es, como mínimo, frívolo. Todas las resoluciones que el Juez Presidente emitió ordenando **el archivo definitivo** de las quejas presentadas por el licenciado Pérez Soto, fueron acompañadas de expresiones sobre cómo el proceder del licenciado era inapropiado. Se le apercibió en innumerables ocasiones de que debía abstenerse de utilizar la vía disciplinaria para relitigar sus casos. De hecho, aunque el Juez Presidente nunca solicitó una investigación ética contra el licenciado Pérez Soto, este Tribunal sí lo llegó a sancionar. Aproximadamente un mes y medio después de que la Oficina de la Procuradora General presentara la querella en contra del licenciado Pérez Soto, este presentó una queja en contra de varios abogados de la parte contraria en el pleito hereditario y de abogadas de la Oficina del Procurador General. Desestimamos la queja e impusimos una sanción de cinco mil dólares al licenciado Pérez Soto, por frivolidad. Además, le advertimos que este Tribunal no tolera ese tipo de conducta y que el incumplimiento con los cánones de ética podría acarrear la suspensión del ejercicio de la profesión.

Finalmente, el abogado argumentó que la Comisionada Especial le restringió el derecho a citar testigos e interrogarlos; restringió la duración de las vistas; limitó sus preguntas, y tardó varios meses en rendir su informe. Nada de lo alegado amerita revisión en este caso. Como concluyó la Comisionada, de permitírsele al licenciado Pérez Soto realizar todas las citaciones e interrogatorios que él quería, el procedimiento disciplinario se hubiese tornado en la relitigación de controversias ya resueltas por los foros con competencia y jurisdicción para ello. Además, la forma de interrogar del licenciado Pérez Soto fue improcedente y en ocasiones opresiva, y la información pertinente podía obtenerse como parte de la prueba presentada y de los expedientes.

El licenciado Pérez Soto también exigió que se le permitiera sentarse a declarar. La Comisionada no se lo permitió porque el licenciado Pérez Soto no tenía un abogado que pudiera interrogarlo. En cambio, accedió a que este presentara un memorial de Derecho. El licenciado presentó una moción informativa de 292 páginas, en lugar del memorial que se le pidió. En la moción, "reafirma una y otra vez el contenido de las quejas que fueron archivadas, sin respeto alguno por las decisiones emitidas, ya que las considera ilegales e injustas", concluyó la Comisionada.

El licenciado Pérez Soto también sostuvo que la Comisionada debe ser disciplinada por conducir un proceso prejuiciado contra él. Aseguró que el informe no discute la

manera en que los jueces de los cuales él se quejó lo trataron a él y que no discute las decisiones judiciales contra él que son erróneas. Aseveró que se vio "oblig[ado] a ir en apelación al Supremo 10 veces donde se dejaron vigentes y se realizaron decisiones por los Tribunales Apelativos que son claramente ilegales, aunque son finales y firmes". No era necesario que se discutieran los méritos de esas decisiones en las vistas. Incluso, de la propia afirmación del licenciado se desprende que en diez ocasiones entendimos que esas decisiones de las que él recurrió no eran "claramente ilegales" como él señala.

En fin, el licenciado Pérez Soto incurrió otra vez en el error de querer usar el proceso disciplinario para litigar el caso de herencia. La Comisionada hizo lo correcto al no permitírselo.

IV

Para determinar la sanción disciplinaria correspondiente, consideramos la buena reputación del abogado en la comunidad; su historial previo; si esta constituye su primera falta y si alguna parte ha resultado perjudicada; su aceptación de la falta y su sincero arrepentimiento; si se trata de una conducta aislada; el ánimo de lucro que medió en su actuación, y el resarcimiento al cliente, además de cualesquiera otras consideraciones.

La Comisionada Especial nos sugiere que consideremos como agravantes la indiferencia y la poca sensibilidad que

el licenciado Pérez Soto ha demostrado hacia los jueces y abogados objeto de sus quejas, ya que continúa insistiendo en las mismas imputaciones que fueron archivadas por carecer de méritos. Estamos de acuerdo. La conducta del licenciado Pérez Soto demuestra su gran desconfianza en el sistema de justicia y sus jueces, sin base, y nos convence de que este no se encuentra apto para la práctica en los tribunales. Aunque el licenciado Pérez Soto no tiene historial previo de conducta antiética, la naturaleza de los eventos por los cuales lo disciplinamos hoy, la cantidad de personas involucradas y el lapso extenso de tiempo durante el cual su conducta se ha mantenido, restan importancia al hecho de que esta sea su primera sanción ética.

Anteriormente, hemos censurado a abogados sin historial previo de conducta antiética por hacer comentarios irrespetuosos. *Véanse* In re Markus, 158 DPR 881 (2003) (por comentarios hechos contra los jueces del Tribunal de Apelaciones); In re Barreto Ríos, 157 DPR 352 (2002) (por comentarios hechos contra el personal de secretaría del Tribunal); In re Crespo Enríquez, supra (por usar lenguaje irrespetuoso al referirse a un juez en un escrito al tribunal). También hemos censurado a abogados enérgicamente por ataques irrespetuosos de imparcialidad contra un juez. In re Rivera García, 147 DPR 746 (1999).

En In re Pagán Hernández, 105 DPR 796 (1977), suspendimos por seis meses a un abogado por faltas de respeto similares dirigidas a los jueces de instancia y a este

Tribunal. A ese mismo abogado lo volvimos a suspender por seis meses al volver a incurrir en esa conducta. In re Pagán, 116 DPR 107 (1985). En In re Martínez, Jr., 108 DPR 158 (1978), suspendimos por tres meses a un abogado sin previo historial de conducta antiética que usó lenguaje irrespetuoso contra el Tribunal en una solicitud de reconsideración. A un abogado que hizo imputaciones infundadas sobre un romance entre el fiscal y la víctima, aludiendo que ello prejuició al fiscal en contra del acusado, lo suspendimos por dos meses. In re Vélez Cardona, 148 DPR 505 (1999).

En In re Cardona Álvarez, supra, el abogado disciplinado tenía una preocupación legítima y una creencia de buena fe de que un oficial jurídico intervino en la sentencia a pesar de ser hermano de uno de los abogados. No obstante, el abogado no lo señaló en el Tribunal de Primera Instancia para que se aclarara su duda, sino que lo planteó ante nos como parte de la reconsideración. Aunque esto no fue adecuado, la sanción se limitó a una amonestación. En In re Matos González, 149 DPR 817 (1999), también amonestamos a un abogado por hacer su cuestionamiento a la honradez de la parte contraria en una moción ante el tribunal.

El caso del licenciado Pérez Soto es distinto a los otros casos que hemos tenido ante nuestra consideración. A lo largo de su proceso disciplinario, negó todo planteamiento en su contra y no modificó su postura. Continuó relitigando asuntos del pleito hereditario y de las quejas

que presentó. Sus imputaciones irrespetuosas contra jueces y compañeros abogados no fueron actos aislados en un momento de juicio nublado. El licenciado Pérez Soto lleva alrededor de una década litigando la herencia de su padre de una manera que ha sido condenada por prácticamente todo juzgador que ha intervenido en el pleito, incluyendo este Tribunal.

Es evidente que una amonestación, censura o suspensión temporera no tendrían efecto en el licenciado Pérez Soto. Por el contrario, a pesar de haber sido apercibido y sancionado previamente, reproduce en este proceso disciplinario el mismo patrón de señalamientos frívolos, en esta ocasión contra la Comisionada Especial. Es decir, lejos de mostrar reflexión y arrepentimiento, su conducta refleja temeridad y obstinación.

Nada del expediente nos sugiere que este tuviese motivos fundados para creer que los jueces conspiraron prejuiciadamente contra él. El licenciado Pérez Soto exponía constantemente los mismos argumentos infundados e insistía en la ilegalidad de decisiones finales y firmes. A lo largo de todo el litigio y de las investigaciones éticas que se han realizado en su contra, el abogado no demostró arrepentimiento. Las veces que presentó quejas y recusaciones contra jueces, y se archivaron, tanto el entonces Juez Presidente como la Directora Administrativa de los Tribunales le apercibieron de que no procedía instar quejas éticas en contra de jueces por discrepancias con sus determinaciones. El licenciado hizo caso omiso de estas

advertencias y se mostró desafiante al repetir los mismos argumentos inmeritorios. Los cánones de ética profesional no son "armas procesales adicionales a ser utilizadas para adelantar los intereses particulares de una de las partes en un caso". In re Fernández Torres, 122 DPR 859, 861 (1988). El licenciado Pérez Soto utilizó impropiamente estos cánones para promover su postura en un pleito hereditario.

Por consiguiente, decretamos la suspensión inmediata e indefinida del licenciado Pérez Soto del ejercicio de la abogacía. El señor Pérez Soto deberá comparecer ante los tribunales mediante representación legal para defender sus intereses en los pleitos relacionados a la herencia de su padre, notificar a todos sus clientes su inhabilidad de seguir representándolos e informar inmediatamente de su suspensión a los foros judiciales y administrativos de Puerto Rico en los que tenga asuntos pendientes.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:



Hiram I. Pérez Soto

                              CP-2015-20







                      SENTENCIA

       En San Juan, Puerto Rico, a 24 de abril de 2018.

       Por los fundamentos expuestos en la Opinión *Per Curiam*
que antecede, la cual se hace formar parte de esta Sentencia,
decretamos la suspensión inmediata e indefinida del
licenciado Pérez Soto del ejercicio de la abogacía. El señor
Pérez Soto deberá comparecer ante los tribunales mediante
representación legal para defender sus intereses en los
pleitos relacionados a la herencia de su padre, notificar a
todos sus clientes su inhabilidad de seguir representándolos
e informar inmediatamente de su suspensión a los foros
judiciales y administrativos de Puerto Rico en los que tenga
asuntos pendientes.

       Notifíquese personalmente esta Opinión *Per Curiam* y
Sentencia.

       Lo acordó el Tribunal y certifica el Secretario del
Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez no
intervino.



                    Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo