*In re* LIC. ALFREDO CARDONA ÁLVAREZ

*Número:* MC-85-47     *Resuelto:* 15 de enero de 1986

*Héctor Rivera Cruz, Secretario de Justicia, Eliadís Orsini Zayas
y Rosa Negrón de Quiñones, Procuradoras Generales Auxi-
liares,* abogadas de El Pueblo; *Alfredo Cardona Álvarez, pro
se.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

El marco conceptual en que se centra la solución de este
asunto deontológico queda plasmado en el siguiente postulado:

> La moderación del lenguaje es, como hemos dicho, uno de
> los primeros deberes del abogado patrocinante; nunca puede
> olvidar que ha sido interpuesto entre los litigantes y la jus-
> ticia, para substituir a los impulsos del interés personal y al
> lenguaje de las pasiones, la calma de la razón y el lenguaje
> de la verdad; debe, por consiguiente, evitar todo lo que tenga
> un carácter de violencia. El abogado debe evitar, en todos
> los casos, la inconveniencia y la grosería de los términos, el
> empleo de imputaciones y de hechos extraños o inútiles al
> asunto y, sobre todo, las alegaciones contrarias a la verdad
> o desprovistas de una razonable presunción de exactitud.
> Pero, el defensor de un derecho injustamente negado,
> ¿Ha de buscar tranquilamente en el fondo de su pena, o de
> sus palabras, la más azucarada miel para refutar ataques
> injustos o ilegales? No.

El magistrado no es un santo frente a fanáticos. Como encarnación de la justicia, el magistrado es impersonal, es un servidor de la ley, servidor de la humanidad jurídicamente organizada; no es un rival del abogado.

Pero la misión social del abogado no es inferior, no es subalterna; él no deja de ser lo que siempre fue; un servidor del derecho, de la libertad y de la personalidad humana, colaborador en los juicios, órgano de funciones sociales indispensables.

Siendo así, como evidentemente es, la magistratura tiene derecho indiscutible al respeto de parte de todos, inclusive de los abogados, como éstos tienen derecho al respeto de todos, inclusive de los magistrados.

El litigante puede fustigar los errores de los jueces, con mayor energía si los considera maliciosos, pero sin expresiones ofensivas. A. E. Parry, *Ética de la Abogacía,* Buenos Aires, Ed. Jurídica Argentina, 1940, Vol. I, págs. 137–138.

## I

Para comprender fielmente la génesis procesal, su trasfondo fáctico y las cuestiones planteadas en este asunto, a continuación transcribimos *ad verbatim* el Informe del Procurador General:

El 30 de mayo de 1985 este Honorable Tribunal emitió resolución ordenándonos rendir un Informe en torno a la comparecencia Especial de 15 de mayo del mismo año, que ante este ilustre foro hizo el Hon. Juez Benito Díaz Laureano. En dicho escrito se relatan varios incidentes judiciales en los cuales ha participado el Lic. Cardona Alvarez, todos los cuales reflejan una aparente costumbre del abogado querellado reñida con los cánones de ética, al utilizar en sus escritos o en sus planteamientos ante el Tribunal lenguaje impropio u ofensivo a la dignidad y respeto de los tribunales.

En síntesis informó el Hon. Juez Díaz Laureano que el día 10 de mayo de 1985 llegó a su conocimiento copia de la Moción de Reconsideración radicada ante el Tribunal Supremo de Puerto Rico por el Lcdo. Alfredo Cardona Alvarez, abogado de los demandantes recurrentes en el caso de *Mi-*

*guel A. Correa, etc.,* demandantes-recurrentes v. *Municipio de Lajas,* demandado-recurrido, Certiorari Núm. O-85-205.

Dicha copia fue radica ante este Tribunal acompañada de una Moción Informativa suscrita por el Lcdo. Carlos J. Córdova Vélez, abogado de la parte demandada recurrida. En el inciso 2(b) de la Moción de Reconsideración radicada por el Lcdo. Cardona Alvarez se expresa lo siguiente:

"porque se hace necesaria la intervención de este Hon. Tribunal en protección de la pureza del procedimiento y para tranquilidad de espíritu (SIC) del suscribiente al enterarnos que la Sentencia fue preparada por el Lic. Carlos Ortiz Alvarez, oficial jurídico del Hon. Juez Díaz Laureano, y a su vez hermano (SIC) del Lic. Pedro Ortiz Alvarez, abogado del recurrido. La justicia no sólo debe serlo, sino que también debe aparentarlo. Es muy difícil que la parte demandnate (SIC) recurrente pueda acpetar (SIC) que en su caso prevaleció la justicia y el derecho y que no intervinieron otras consideraciones al dictarse la sentencia."

Por entender que las manifestaciones hechas por el Lcdo. Cardona Alvarez son ofensivas a la dignidad de este Tribunal y que requerían una aclaración por parte del magistrado, éste procedió a aclarar lo siguiente y citamos *ad-verbatim:*

"La función del Oficial Jurídico en nuestros Tribunales es una de vital importancia. Sin embargo, la existencia de Oficiales Jurídicos no sustituye el criterio de los Jueces que utilizan sus servicios. Esta es una función indelegable.

En este caso en particular al serle referido para su estudio al Lcdo. Carlos Ortiz Alvarez Oficial Jurídico de este Tribunal, éste nos llamó la atención de que su hermano el Licenciado Pedro Ortiz Alvarez había participado en etapas anteriores en el caso y que prefería no intervenir en el mismo. El juez suscribiente a pesar de conocer la integridad profesional del Lcdo. Carlos Ortiz Alvarez y de entender que se trataba de un planteamiento de derecho, prefirió relevarlo de la responsabilidad del estudio sobre las cuestiones de derecho en este caso y procedí a realizarla yo mismo.

Las alegaciones del Lcdo. Cardona Alvarez atentan contra la dignidad de este Tribunal al hacerle imputaciones de prejuicio y parcialidad sin tener fundamento alguno."

Añadió el magistrado que esta conducta del Lcdo. Cardona Alvarez es una reiterada. Que éste acostumbra hacer imputaciones de prejuicio y parcialidad a los Jueces cada vez que carece de fundamentos en derecho para sostener sus alegaciones. A estos efectos trajo a colación otros dos casos en que se repite el mismo tipo de conducta.

En el caso de *Pueblo* v. *Ramón Cuevas Ramírez*, M85-75, el Lcdo. Cardona Alvarez hizo imputaciones de prejuicio y parcialidad contra el Hon. Juez Carlos Rodríguez Muñiz quien actuando como Juez de Distrito Designado, resolvió en contra de sus pretenciones. Al levantar estas alegaciones en su Escrito de Apelación y no aportar prueba para sostenerlas el Juez Díaz Laureano dictó una Sentencia en la que se le llamó la atención a esos efectos.

Anteriormente, en el caso *Sociedad de Gananciales compuesta por Alfonso Cardona y Luz M. Rivera* v. *Aida I. Rivera*, CS83-1176, también en Apelación ante este Juez, el Lcdo. Cardona Alvarez hizo una serie de imputaciones al Honorable Federico Toro Goyco. En aquella ocasión y sin prueba para sostener sus alegaciones señaló lo siguiente:

"Que el Tribunal actuó con prejuicio y parcialidad al cambiar su actitud y dictar una sentencia que no representa el balance más racional justiciero y jurídico de la prueba presentada, situación que atribuye el suscribiente (Lcdo. Cardona Alvarez) a que se negó a hacer una declaración jurada a favor del Ex-Juez Toro Goyco, cuando era investigado por la Administración de Tribunales."

En sentencia dictada por el Juez Benito Díaz Laureano se le llamó la atención al Lcdo. Cardona Alvarez a los efectos de que sus imputaciones carecían de base para sostenerlas y que eran frívolas. Se le impuso una sanción de Quinientos Dólares.

Véase documentos en bloque, Exhibits I, II, III, IV, V, VI, VII, VIII y IX.

Examinada la prueba documental ante nuestra consideración, todo parece indicar que el Lic. Alfredo Cardona Alva-

rez violó el Canon 9 de los de Etica Profesional. *In Re Andréu Ribas,* 1959, 81 DPR 90. Parafraseando en lo aplicable a *Pueblo* v. *Estrada Calderón,* 1967, 95 DPR 724 señalamos:

"Incumple un abogado su deber profesional para con el Tribunal Supremo (y añadimos para con cualquier tribunal) cuando no discute ni sustancia sus alegaciones." Véase además *In Re Pagán Hernández,* 1977, 105 DPR 796.

## II

Las conclusiones de este Informe fueron notificadas al licenciado Cardona Álvarez. Le concedimos término para que compareciera a mostrar causa por la cual no debería ser disciplinado por violación al Canon 9 de Ética Profesional. (¹)

En su comparecencia, el licenciado Cardona Álvarez discrepa de la conclusión del Procurador General respecto a que en los trámites procesales de los tres casos aludidos por el Juez Superior, Honorable Díaz Laureano, no discutió ni sostuvo sus alegaciones sobre prejuicio, pasión y parcialidad. Ante nos, para justificar su estilo forense, explica su comportamiento en los siguientes términos:

En el empeño de llevar a cabo una gestión profesional de la más alta calidad y devota lealtad hacia el cliente *es posible que nos extralimitemos o en nuestro reclamo demos a entender que hay ofensa o que no tenemos confianza en el sistema judicial. Siempre hemos tenido o tenemos esa confianza.* La

----

(¹) Reza:

"El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieran tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

"El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa."

ocurrencia de un hecho aislado en una abundante práctica durante *catorce años* no nos puede poner en el camino equivocado.

Finalmente señala:

*No ha sido nunca nuestra intención de ofrecer o lesionar la buena imagen de nuestros Tribunales. Y si así fuere o se interpretare, estamos dispuestos a pedir que se nos excuse.* Es posible que en la defensa del más débil en algún momento hallamos ido más allá de lo que el deber nos exige. En nuestra práctica general la clientela que atendemos en su gran mayoría son de clase baja o media baja y nunca nos hemos negado a prestar nuestros servicios sin importarnos si vamos a cobrar o no, llegando al extremo de pagar multas de clientes que no pueden pagarla para evitar que por su pobreza sean encarcelados y todas las demás consecuencias familiares. No decimos esto para buscar reconocimiento ni compensación sino para señalar *aquí que no se trata del abogado que está continuamente buscando rencores y problemas, el que desafía los Jueces, o el que no le importa en lo absoluto el buen nombre de la profesión* y la justicia no se trata del abogado socialmente desprestigiado, sino que por el contrario que se trata del que lucha, del que defiende la ley, el orden, la moral y el que protege su título por venir de una familia humilde y honrada y sacrificada.

Cuando actuamos en representación de un cliente solicitamos que se resuelva en su favor. En esta comparecencia no solicitamos nada a nuestro favor sino que lo sometemos a vuestro beneficio y sana discreción en su loable cumplimiento del deber ministerial. (Énfasis suplido.)

## III

Ameritan seria reflexión los señalamientos del querellado Cardona Álvarez. Su postura encuentra apoyo en la realidad de que el ejercicio de la abogacía es una tarea difícil y compleja. Por ello, se ha dicho que "la forma y el contenido de una ley o de una sentencia, el consejo que proporcione un abogado y la obediencia espontánea o no a una norma, dependen en cada momento no sólo de la definición operacional y la conducencia de dicha norma, sino también de un abanico de acti-

tudes y comportamientos de muy compleja naturaleza". L. Muñoz-Sabaté, R. Bayés y F. Munné, *Introducción a la Psicología Jurídica*, México, Ed. Trillas, 1980, pág. 29. Nuestra profesión exige de sus miembros múltiples funciones y a menudo, el desempeño de papeles diversos y conflictivos. Algunos, a veces de su faz, y otros en apariencia —aunque no lo sean— pueden estar en contradicción con los principios deontológicos que inspiran el Código de Ética Profesional.

Reconocemos esta fluida realidad. Al decir de Couture, "la abogacía es una ardua fatiga puesta al servicio de la justicia". Véase A. R. Sivori, *Papel del abogado en la sociedad actual*, XV Rev. C. Abo. La Plata 19–29 (1974). Ante esa situación, la clave para enjuiciar justamente esa conducta es examinar y balancear apropiadamente los valores en juego. Veamos.

■ Hoy en día no se cuestiona que el respeto y exaltación del foro judicial han de tener en el abogado su mejor exponente. *In re Martínez, Jr.*, 108 D.P.R. 158, 163–164 (1978). Éste no debe convertirse en un simple observador aislado de la psicogénesis y dinámica decisoria. En muchos extremos, el abogado será protagonista y coadyuvante del drama judicial. Su persona es una extensión básica de los tribunales. *In re Carreras Rovira*, 115 D.P.R. 778 (1984); *Ramírez de Arellano* v. *Srio. de Hacienda*, 85 D.P.R. 823, 830 (1962).

■ Como tal, debe tener un claro concepto de la misión fundamental pública que ejerce. En la escala de valores profesionales ha de colocar a ésta por encima de cualesquiera personalismos. *Pueblo* v. *Susoni*, 81 D.P.R. 124, 153 (1959); R. H. Viñas, *Ética y derecho de la abogacía y procuración*, Buenos Aires, Ed. Pannedille, 1972, págs. 225–227. El ejercicio de su profesión, inextricablemente, es consustancial a la función de impartir justicia, que por imperativo presupone la existencia de una comunidad civilizada y democrática, cimentada en el imperio de la ley. *In re Padilla*, 87 D.P.R. 236, 261 (1963). Así, la búsqueda de la verdad, en su justo cauce, no es incom-

patible con el respeto y consideración hacia los tribunales. El abogado nunca debe olvidar que es un funcionario que tiene la obligación de mantener y promover inmaculada la imagen de la justicia. *Coll Moya* v. *Alcaide, Cárcel Municipal,* 89 D.P.R. 225, 238 (1963).

Sin embargo, el respeto hacia los tribunales, y su exaltación como uno de los postulados deontológicos más hermosos, no implica el establecimiento de una censura previa. Tampoco el que no reconozcamos la más amplia y dilatada libertad de defensa al abogado en el ejercicio de su profesión.

Incuestionablemente, la crítica judicial sana y oportuna es un instrumento necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones. Tal crítica es un interés legítimo constitucional que debemos proteger. Es un vehículo apropiado para producir cambios favorables en el sistema de administración de justicia. Nuestro deber es escuchar esa crítica sin infundada sensiblería.([2])

Escuchar, escuchar con advertencia, un poco de humildad y un mucho de cortesía, las opiniones ajenas, aceptando sin demora ni regateo todo lo que tengan de fundadas y de estimables. Fuera todo ribete de soberbia intelectual capaz de impermeabilizar al Magistrado frente a ajenos veredictos, encerrándole en la concha de un exclusivismo razonante con desmedido culto al propio parecer. El que fue Subsecretario del Ministerio de Justicia, señor López Martínez, pronunció en su toma de posesión estas bellas y certeras palabras: "No escuchar es taparse los ojos y exponerse a ser dirigidos por teóricas y vanas ilusiones. No escuchar puede ser una forma de apego desordenado a los propios pareceres. Escuchar es ser atento, enterarse de lo que nos dicen y hacer un esfuerzo

---

([2])En un caso de desacato criminal, el Tribunal Supremo federal señaló: "Los tribunales de instancia . . . deben estar en guardia contra confundir ofensas a sus sensibilidades con la obstrucción a la administración de la justicia." (Traducción nuestra.) *Brown* v. *United States,* 356 U.S. 148, 153 (1958).

leal para comprender. Escuchar es incómodo porque somete a crítica nuestros planes, nos hace ver que nuestros proyectos, que nos parecían muy buenos, tienen puntos flacos o por lo menos discutibles, y nos impone el arduo trabajo de armonizar o de elegir . . . ; pero es imprescindible; sin escuchar no se debe gobernar ni el pequeño y entrañable mundo de nuestros hogares." F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1977, pág. 50.

Sin embargo, nuestra concepción panorámica del libre fluir de ideas, inclusive las críticas, en lo que concierne a la práctica de la abogacía no significa que las mismas puedan traspasar los límites de la honradez, civilidad y corrección. "Debemos comprender que dentro de la variedad de interpretaciones que es posible formular a una norma jurídica, las diferencias entre el pensamiento del Juez y el del abogado litigante, no facultan para denostar al primero." E. L. Guerrero, *Algunas consideraciones de ética profesional para los abogados*, México, Ed. Porrúa, 1982, pág. 27. Nada más destructivo del justo balance de la conciencia judicial, que la crítica injustificada y viciosa. Ello deteriora y obstaculiza el libre curso de una administración recta e imparcial de la justicia. *In re Andréu Ribas*, 81 D.P.R. 90, 120 (1959). "Todas las personas involucradas en el proceso judicial —jueces, litigantes, testigos y oficiales del tribunal— tienen un deber de cortesía con los demás participantes. La necesidad de que haya civilidad en el marco inherentemente contencioso del proceso adversativo, sugiere que los miembros de la clase togada hagan sus críticas al sistema en un tono profesional y cortés." (Traducción nuestra.) *In re Snyder*, 86 L.Ed.2d 504, 514, 53 U.S.L.W. 4833, 4837 (1985).

Así, cuando un abogado entiende que el comportamiento judicial de alguna manera afecta los derechos de su representado, debe solicitar del foro correspondiente el remedio apropiado. Posteriormente, de ser necesario, puede llevarlo a récord para la acción correctiva procedente por un tribunal de superior jerarquía. *Pueblo v. Susoni*, supra, pág. 154.

906

Para evaluar la legitimidad de la conducta oral o escrita del abogado, y balancear los intereses éticos y de libertad forense expuestos, hemos establecido varios criterios, a saber: (a) si aunque equivocado, creía en la validez de las imputaciones al juez; (b) si aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer en su veracidad, y (c) si la imputación no fue hecha maliciosamente con el propósito deliberado de denigrar al tribunal. Véanse *In re Martínez, Jr.,* supra; *In re Torres,* 81 D.P.R. 928 (1960); *In re Andréu Ribas,* supra, e *In re González Blanes,* 65 D.P.R. 381 (1945).

Con arreglo a esta visión doctrinaria, hemos impuesto sanciones disciplinarias a un abogado, por hacer imputaciones orales o escritas, sobre la comisión de hechos inmorales o ilegales —que no están respaldadas por evidencia competente— tendente a degradar la dignidad, honorabilidad e integridad de los tribunales y de sus funcionarios o que puedan debilitar la confianza pública en los mismos. *In re Andréu Ribas,* supra, pág. 119. Asimismo por la presentación de mociones y escritos en los que se formulan acusaciones a los magistrados, sin fundamentos, mediante el uso de lenguaje impropio y ofensivo, lo cual constituye conducta lesiva a la dignidad del tribunal. *In re Padilla,* supra, pág. 261.

El abogado no tiene licencia absoluta en el uso del lenguaje([3]) para poner en entredicho o mancillar la dignidad

---

([3]) El "[a]bogado debe respeto y consideración al magistrado, y éste debe exigir ese respeto, si no a título personal, sí como representante de la justicia. La majestad de la justicia no admite ofensa, por leve que sea. Así, pues, cuando se habla de respeto al magistrado, no se quiere dar una regla escolar de buena educación o urbanidad, sino significar una obligación, que por lo demás es recíproca, de respeto a la justicia y de respeto a la defensa. *El abogado puede no expresar estimación al magistrado, pero está obligado a respetarlo."* (Énfasis suplido.) R. Bielsa, *La Abogacía,* Buenos Aires, Ed. Abeledo-Perrot, 1960, pág. 240.

de los jueces. En este sentido, el constantemente recurrir al apuntamiento de que el tribunal actuó "con prejuicio, pasión y parcialidad", sin sustanciarlo o sin motivos fundados para así creerlo, es un comportamiento censurable que hemos de rechazar. (⁴) Tal conducta y estilo forense rebasan el ámbito de lo legítimo. Deben desalentarse.

## IV

Bajo este prisma, hemos de evaluar la conducta del querellado Cardona Álvarez.

En primer término, como a todo abogado, le reconocemos perfecto derecho a defender una causa vehemente y enérgicamente. Inclusive, tiene la obligación de protestar y señalar situaciones procesales que puedan macular el proceso.

Ciertamente, Cardona Álvarez ante este foro imputó a los tribunales recurridos haber actuado con pasión, prejuicio o parcialidad en los tres recursos. Un examen de los autos rela-

---

(⁴) Cobran vigencia hoy nuestros pronunciamientos en *Cordero v. Rivera*, 74 D.P.R. 586, 609 (1953):

"Equivocarse en la apreciación de la prueba, al igual que equivocarse en la aplicación de la ley, es un error en el cual podemos incurrir todos los que llevamos sobre nuestros hombros la difícil tarea de impartir justicia. Y un abogado tiene perfecto derecho a plantearlo en apelación, a nombre de su cliente, si considera que aquél es manifiesto. Con ello cumple a cabalidad su gestión profesional.

"Actuar 'con mente prevenida y con pasión y prejuicio' al llevar a cabo su función judicial, no sería un mero error del juzgador; sería el incumplimiento esciente del deber de honradez de conciencia, que hace del Juez un símbolo y del Tribunal un templo en los conglomerados civilizados. Por el sitio que ocupan en la sociedad y por su condición de funcionarios de los tribunales, *los abogados deben ser cautelosos al hacer a un Juez imputaciones de tal magnitud y alcance, y ello solamente si están convencidos, en lo más profundo de sus conciencias —a la vez no prevenidas— de la certeza de sus afirmaciones, y entonces para exigir la verdadera responsabilidad que tan grave desviación del deber conlleva.*" (Énfasis suplido.) Pág. 609.

tivos al incidente en el caso *Correa* v. *Municipio de Lajas, Cert.* Núm. O-85-205, nos convence de que existió una preocupación legítima sobre la intervención o grado de participación del Oficial Jurídico del Juez Honorable Díaz Laureano. Esa inquietud y duda quedó aclarada por el propio magistrado. De la misma resultó errónea la apreciación en cuanto a la intervención activa y directa de un Oficial Jurídico hermano de quien había sido abogado de una de las partes. Antes de levantarlo, por vía de reconsideración en este foro apelativo, Cardona Álvarez debió primeramente haberlo planteado a dicho juez para que éste esclareciera sus dudas. Sin embargo, el récord y su comparecencia tienden a reflejar ausencia de malicia o propósito de lesionar la imagen del tribunal.

Respecto a las otras dos causas —*Pueblo* v. *Ramón Cuevas Ramírez*, (O-85-370) y *Soc. Gananciales Cardona-Rivera* v. *Rivera*, (O-84-608)— los autos demuestran que los señalamientos sobre prejuicio, pasión y parcialidad no fueron debidamente acreditados. Es cuestionable que existiera causa probable para sostenerlos. A pesar de ello, para propósitos de la severidad de la sanción, le damos el beneficio de la duda en cuanto a que "aunque equivocado, creía de buena fe en la validez de su queja". *Cordero* v. *Rivera*, 74 D.P.R. 586, 609 (1953).

Hasta que se promovió este asunto, el querellado Cardona Álvarez no había sido objeto de trámite disciplinario previo. En estas circunstancias, *vista su comparecencia y al considerar que fue sancionado económicamente en uno de los casos por el fundamento de que el señalamiento era frívolo, en justicia, circunscribimos nuestra sanción a una amonestación que debe ser ejemplarizante a toda la clase togada del país.*

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Pons Núñez no intervino.