EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2020 TSPR 79 |
| Carlos E. Díaz Olivo (TS-7839) | 204 DPR _____ |

Número del Caso: AB-2019-100


Fecha: 7 de agosto de 2020


Abogado del promovido:

    Lcdo. Pedro Ortiz Álvarez


Materia: Resolución del Tribunal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos E. Díaz Olivo                    AB-2019-100


RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de agosto de 2020.

I.

El 5 de noviembre de 2019 emitimos una Resolución en la que amonestamos al Lcdo. Carlos E. Díaz Olivo. Lo anterior, tras evaluar un referido que realizó el Juez Superior del Tribunal de Primera Instancia, Región Judicial de Bayamón, Hon. Raphael G. Rojas Fernández, quien presidía el caso *Ricardo J. Torres Cintrón v. NY Pizza & Foods Corporations y otros* (Caso Civil Núm. DAC2015-2215). Examinados los autos del proceso judicial y la comparecencia del licenciado Díaz Olivo, concluimos que este violó "el Canon 9 de Ética Profesional, 4 LPRA Ap. IX, al utilizar lenguaje irrespetuoso, destemplado y mordaz para mancillar la dignidad e integridad de la Hon. Sarah Y. Rosado Morales, el Hon. Raphael G. Rojas Fernández y el entonces Juez Administrador de la Región Judicial de Bayamón, el Hon. José M. D'Anglada Raffucci, así como de los funcionarios y funcionarias que laboran en la Región Judicial de Bayamón".[1]

_____

[1] *In re: Carlos Díaz Olivo*, res. 5 de noviembre de 2019, 2019 TSPR 205. El pleito en el que el licenciado Díaz Olivo presentó los escritos que motivaron que este Tribunal lo amonestara inició en el 2015. En él se solicitó la expedición de una orden sumaria bajo el artículo 7.10 de la Ley General de Corporaciones contra las partes demandadas, NY Pizza & Food Corporation y Manuel Cruzado Rodríguez, a quienes representaba el licenciado Díaz Olivo.

En esa ocasión, también apercibimos al licenciado Díaz Olivo "de su deber de dar fiel cumplimiento a los Cánones de Ética Profesional, en particular en lo que respecta el Canon 9, el cual le impone la responsabilidad de observar en todo momento una conducta caracterizada por el mayor respeto ante los jueces y otros funcionarios del tribunal" y que "de repetirse este tipo de actuación podrá ser objeto de sanciones más severas, incluso la suspensión del ejercicio de la profesión".[2]

El licenciado Díaz Olivo nos solicitó que reconsideremos esa determinación. Esta vez compareció representado por un abogado. En el escrito que presentó a esos fines planteó dos fundamentos principales. En primer lugar, cuestionó el proceso disciplinario seguido en su contra, el cual catalogó como un proceso "recortado, distanciado de las normas ordinarias y sin las debidas garantías que impone el debido proceso de ley".[3] En síntesis, planteó que al evaluar la queja en su contra este Tribunal se desvió de la Regla 14 de nuestro Reglamento, 4 LPRA Ap. XXI-B, R. 14.

En segundo lugar, planteó que las expresiones objeto del referido no justificaban una amonestación. Sobre este aspecto, indicó, que "-debidamente contextualizadas-" sus expresiones "están constitucionalmente protegidas", pues, a su juicio, constituyen una legítima denuncia de "irregularidades y faltas administrativas que, nadie con conciencia y con compromiso ante el país y su pueblo, podía ignorar y dejar de denunciarlas".[4]

Resolvemos sus planteamientos. Adelantamos que estos no nos mueven a variar nuestra determinación, pues, independientemente de cuán convencido esté el licenciado Díaz Olivo de que su proceder estaba justificado, o de la veracidad de sus denuncias, este Tribunal considera que -debidamente contextualizadas- las expresiones que incluyó en múltiples escritos presentados en el tribunal, además de innecesarias, representaron caracterizaciones irrespetuosas que están reñidas con los valores y obligaciones que recogen nuestros Cánones de Ética Profesional, 4 LPRA Ap. IX.

II.

La Regla 14 del Reglamento del Tribunal Supremo de Puerto Rico establece las pautas procesales que regulan los procesos disciplinarios instados contra abogados.[5] Reconoce dos etapas básicas en ese proceso: una de carácter investigativo y otra de naturaleza adversativa. La fase investigativa comienza cuando una persona presenta una queja contra un abogado o

---

[2] *Íd.*
[3] Moción de reconsideración, pág. 1.
[4] *Íd.*, págs. 1-2.
[5] 4 LPRA Ap. XXI-B, R. 14.

cuando un tribunal refiere la conducta de un abogado a este Tribunal para que evalúe si el abogado incurrió en conducta anti-ética.[6] Recibida la queja o referido, el Secretario de este Tribunal remite una copia al abogado y le concede un término de 10 días para contestarla.[7] Una vez transcurre ese término, el Secretario del Tribunal refiere la queja y la contestación a la Oficina del Procurador General (OPG) para que prepare un informe en torno a los méritos de la queja o referido.[8] Luego de examinar esa recomendación, el Tribunal decide si procede archivar la queja, ordenar a la OPG que amplíe la investigación o encomendar el asunto a una Jueza o Juez del Tribunal para que evalúe el asunto y realice una recomendación al Pleno del Tribunal.[9] Completado ese trámite, el Tribunal puede ordenar a la OPG que presente una querella contra el abogado, lo cual marca el inicio de la etapa propiamente adversativa del proceso disciplinario.[10]

El proceso antes descrito aplica a la generalidad de los procedimientos disciplinarios por violaciones al Código de Ética Profesional. Sin embargo, como hemos afirmado, en el ejercicio de nuestras facultades disciplinarias este Tribunal está "liberado de toda rutina procesal sin más limitación que la garantía de un debido proceso".[11]

Así pues, hemos prescindido de las etapas procesales investigativas que contempla la Regla 14 del Reglamento del Tribunal Supremo cuando los hechos imputados contra un abogado han sido adjudicados en otro foro,[12] o cuando pueden constatarse de manera incontrovertida sin una vista probatoria.[13] Ese es un curso de acción adecuado cuando, como en este caso, el proceso disciplinario se activa por un referido de un juez y se alega que un abogado se apartó de sus deberes éticos por la manera en que se dirigió al tribunal en sus escritos.[14] Claro está, en tales casos será necesario conceder una oportunidad al abogado para que se exprese sobre los méritos de las imputaciones formuladas en su contra, además de reconocerle cualquier remedio procesal aplicable

---

[6] S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, Estados Unidos, Pubs. J.T.S., 2010, pág. 348 ("Un referido suele realizarse por los tribunales cuando a juicio de [e]stos existe la posibilidad de que algún abogado haya violado el Código de Ética Profesional").
[7] 4 LPRA Ap. XXI-B, R. 14(c).
[8] *Íd.*, R. 14(d).
[9] *Íd.*, R. 14(e).
[10] *Íd.*
[11] *In re: Reichard Hernández*, 180 DPR 604, 614 (2011) (citando a *In re: Cancio Sifre*, 106 DPR 386, 389 esc. 1 (1977)).
[12] Véase Ley del 11 de marzo de 1909, 4 LPRA sec. 735; *In re: Belén Trujillo*, 128 DPR 949 (1991).
[13] Véase *In re: Vázquez Torres*, 182 DPR 853, 857 (2011) ("las exigencias de debido proceso aquí mencionadas, corresponden a la etapa en la cual el Tribunal recibe la prueba contra el abogado y, por lo tanto, resultan inaplicables a los hechos del presente caso").
[14] *In re: Martínez, Jr.*, 108 DPR 158 (1978).

luego de que este tribunal emita una decisión final sobre el asunto.

El referido contra el licenciado Díaz Olivo se basa en el contenido de sus escritos. Así pues, lo dicho por él está documentado. Tras recibir el referido del Tribunal de Primera Instancia, concedimos una oportunidad al licenciado Díaz Olivo para que expresara su posición sobre lo alegado en su contra, tal y como exige la Regla 14(c) de nuestro Reglamento, 4 LPRA Ap. XXI-B, R. 14(c). Este presentó un escrito extenso, por derecho propio, en el que tuvo la oportunidad de expresar sus planteamientos sobre lo alegado contra él y, en particular, sobre el contenido de los escritos que firmó y sobre cuya autoría no existe controversia. Así pues, sus planteamientos en cuanto a que el trámite del referido no encuentra apoyo en el esquema disciplinario vigente o en nuestros precedentes son incorrectos.

Al cuestionar el proceso en su contra, el licenciado Díaz Olivo, por medio de su representación legal, también hace unos señalamientos colaterales que debemos atender. En varias ocasiones, su representación legal alega que este Tribunal recibió prueba exógena al expediente y que el promovido desconocía. Plantea, por ejemplo, que en la Resolución cuya reconsideración solicita "hay por lo menos dos citas que no aparecen en el referido" del Juez Rojas Fernández, por lo que, aduce, "esto debe significar que el Tribunal Supremo utilizó otras fuentes".[15] Alude además a una nota al calce de nuestra Resolución del 5 de noviembre de 2019 en la que indicamos que, sobre las irregularidades informadas por el licenciado Díaz Olivo, los señalamientos meritorios fueron atendidos.[16]

No tiene razón el promovido en cuanto a estas imputaciones. Como se dijo, la queja en su contra inició tras un referido que hizo el juez Rojas Fernández. Al referirnos el asunto, este ordenó que se elevara a este foro la totalidad del expediente del caso *Ricardo J. Torres Cintrón v. NY Pizza & Foods Corporations y otros* (Caso Civil Núm. DAC2015-2215). Así, la resolución en la que el juez Rojas Fernández instruyó el referido, al igual que el expediente judicial en su totalidad, formaban parte de la prueba documental, incluidos los escritos que suscribió el licenciado Díaz Olivo cuando el caso era presidido por la jueza Sarah Y. Rosado Morales y las mociones referidas al entonces Juez Administrador de la Región Judicial de Bayamón, José M. D'Anglada Raffucci. Claramente, al evaluar el comportamiento ético del licenciado Díaz Olivo este Tribunal estaba obligado a considerar la totalidad del expediente ante nuestra consideración.

---

[15] Moción de reconsideración, pág. 6.
[16] *In re: Carlos Díaz Olivo*, supra n.1.

En ese proceso, pudimos examinar múltiples escritos relevantes a las imputaciones contra el licenciado Díaz Olivo, así como las órdenes que emitió el entonces Juez Administrador Regional dirigidas a atender planteamientos procesales y administrativos.[17] El expediente del caso, con los escritos del licenciado Díaz Olivo y las órdenes emitidas al atenderlos, fue la base probatoria de nuestra decisión. Por ello, no nos convencen los planteamientos procesales del promovido.

III.

El licenciado Díaz Olivo planteó también en su petición de reconsideración que sus expresiones constituyeron una denuncia legítima de irregularidades ocurridas durante la tramitación de un litigio en el que representaba a una parte. Plantea que estas deben contextualizarse para evaluarlas en su justa perspectiva. Añade que sus expresiones se justifican y están protegidas constitucionalmente en consideración a las irregularidades que considera ocurrieron en la tramitación del caso. En ese sentido, parece sugerir que sus expresiones son una reacción proporcional a las alegadas irregularidades que denunciaba.

En materia de ética y responsabilidad profesional de abogados, y también de jueces, ciertos derechos constitucionales, como el derecho a la libertad de expresión, tienen un alcance compatible con la naturaleza del trabajo que estos profesionales realizan. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991) ("It is unquestionable that **in the courtroom itself**, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed") (Énfasis suplido); *In re Snyder*, 472 U.S. 634, 644-45, 647 (1985) ("The license granted by the court

---

[17] Por ejemplo, con relación al trámite inadecuado de la resolución de la jueza Rosado Morales en la que esta resolvió la petición de inhibición formulada en su contra, surge una Orden Administrativa del Juez Administrador D'Anglada Raffucci en la que reconoce la existencia de dos resoluciones contradictorias y ordena la devolución del expediente judicial a la Jueza Rosado Morales "para que aclare cuál es la Resolución que ella emitió, **se notifique nuevamente** a las partes la determinación de la Jueza sobre la petición de inhibición y proceda de conformidad a derecho". Orden Administrativa del juez José M. D'Anglada Raffucci de 3 de julio de 2018 (Énfasis en el original). Asimismo, con relación al malestar que causó en el licenciado Díaz Olivo la expresión de la Jueza Rosado Morales en la que indicó "No Ha Lugar a la Cátedra", surge una orden de la jueza instruyendo una enmienda a la minuta concernida para, precisamente, rectificar ese lenguaje. Véase Minuta Enmendada de 29 de diciembre de 2018. Y, en cuanto a la solicitud de la regrabación de la vista del 14 de septiembre de 2017, surgen del expediente varias órdenes, en particular una del Juez Administrador, en la que autoriza lo solicitado. Véase Orden, 29 de diciembre de 2017. Otros señalamientos del licenciado Díaz Olivo constituyen cuestionamientos de determinaciones judiciales que apoyaron, a su vez, las solicitudes de recusación de los jueces Rojas Fernández y Rosado Morales. Como tales, fueron atendidos en el trámite judicial.

requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice").[18] Se procura así crear un equilibrio racional entre derechos que en otro contexto pudieran tener un alcance de mayor envergadura y las exigencias de los procedimientos adversativos para garantizar y proteger intereses vitales para la búsqueda de la verdad y la obtención de un resultado judicial justo e imparcial.

En esa línea, el deber de respeto que exige el Canon 9 de Ética Profesional le impone a quienes ejercen la abogacía ciertos deberes éticos en cuanto a la forma en que un abogado puede dirigirse a un tribunal. No limita la posibilidad de que un abogado formule una denuncia válida sobre la forma en que se desarrolla un procedimiento judicial o sobre la idoneidad de un juez para presidir un caso en la medida en que existan razones legítimas para solicitar su inhibición o recusación, según lo pautado en la Regla 63 de Procedimiento Civil[19] y en el Canon 20 de Ética Judicial.[20] Sin embargo, el Canon 9 tiene implicaciones en cuanto al tono y la caracterización en que se realiza una denuncia o se solicita la inhibición o recusación al establecer una pauta de comportamiento que obliga a un abogado a ser respetuoso en los escritos que presenta en un tribunal, independientemente de la naturaleza de lo que solicita o de la magnitud o severidad de su denuncia.

En su petición de reconsideración, el licenciado Díaz Olivo argumenta que las expresiones que fundamentaron la amonestación que impuso este Tribunal no violentaron el Canon 9 de Ética Profesional. Considera que sus expresiones "se refieren a críticas y opiniones".[21] Plantea, en cambio, que "[e]l único señalamiento de algún contenido fáctico es el relacionado con la Jueza Rosado y el verbo mentir".

---

[18] El Tribunal Supremo federal realizó esta expresión en un caso en el que resolvió que un tribunal apelativo erró al suspender por un término de seis meses a un abogado que utilizó lenguaje descortés en una carta que envió a la secretaria de un juez. Sin embargo, basó esa determinación en los hechos particulares del caso y en que no existía evidencia en el récord que ameritara imponer esa sanción, ya que se trató de un solo incidente. In re Snyder, 472 U.S. 634, 647 (1985) ("However, even assuming that the letter exhibited an unlawyerlike rudeness, **a single incident** of rudeness or lack of professional courtesy —**in this context**— does not support a finding of contemptuous or contumacious conduct, or a finding that a lawyer is 'not presently fit to practice law in the federal courts'. Nor does it rise to the level of 'conduct unbecoming a member of the bar' warranting suspension from practice'") (Énfasis suplido). El caso del licenciado Díaz Olivo es distinguible, tanto por el carácter reiterado de las expresiones irrespetuosas que realizó como por la sanción impuesta.

[19] 32 LPRA Ap. V, R. 63.

[20] 4 LPRA Ap. 4-B, C. 20.

[21] Moción de reconsideración, pág. 9.

Veamos qué dijo el licenciado Díaz Olivo específicamente. En una moción que firmó y presentó en el Tribunal de Primera Instancia el promovido expresó:

¿Qué nos intenta decir el sistema judicial con esta Resolución, que la Juez Rosado Morales nos mintió o que nos engañó o que nos indujo a error o que nos burló en la confianza institucional que necesariamente había que prestarle a sus palabras como funcionaria del Estado cuando afirmó por escrito que se inhibía motu proprio?[22]

Esta expresión sugiere que la mentira, el engaño, el interés de inducir a error o la burla fueron las únicas causas posibles del incidente al que alude. En contraste, en la moción de reconsideración el promovido reconoce que lo denunciado también pudo ser fruto de "una confusión o cualquier situación excusable".[23] Además, plantea que esa expresión no implicó llamar mentirosa a la jueza Rosado Morales. De hecho, la representación legal del promovido señala expresamente en su escrito que "[e]l licenciado Díaz Olivo nunca la llamó mentirosa".[24]

No nos convence. Al contextualizar la expresión citada a base de las múltiples otras expresiones de lenguaje altisonante incluidas en los escritos del promovido, es forzoso concluir que el licenciado Díaz Olivo calificó de "mentirosa" a la jueza Rosado Morales. A manera de ejemplo, el promovido expresó que la Jueza Rosado Morales **deliberadamente intentó inducir a error a las partes** ("[…] no es admisible ni permisible que un magistrado coloque incorrecciones en el expediente judicial para inducir a error e intentar justificar su manejo inadecuado de los procedimientos");[25] ("[l]a distorsión del record [sic] judicial que ha confeccionado la Juez Rosado Morales queda establecida y probada con el mero examen del expediente

---

[22] Urgente moción en honor a la verdad y solicitud de ejercicio de prudencia, 25 de junio de 2018, pág. 5.

[23] Moción de reconsideración, pág. 9. Indica el licenciado Díaz Olivo por medio de su representación legal:

El único señalamiento de algún contenido fáctico es el relacionado con la Jueza Rosado y el verbo mentir. El Lcdo. Díaz Olivo nunca la llamó mentirosa. No obstante, algún distanciamiento de la verdad tiene que estar presente cuando existen varias órdenes relacionadas con una inhibición, que, por los motivos que fuera, genuinamente ocurrió y posteriormente se niega. **Pudo ser negligencia, una confusión o cualquier situación excusable**, pero ante los ojos del abogado aparece una irregularidad cuya existencia quedó establecida. No existe falsedad y mucho menos malicia.

*Íd.* (Énfasis suplido).

[24] *Íd.*

[25] *Íd.*

judicial de este caso…").[26] **Acusó a la Jueza Rosado Morales de incurrir intencionalmente en conducta mendaz** ("La Juez […] construyó una Resolución Judicial afirmando un hecho que le constaba que no es cierto […]");[27] ("expresamente alertamos al Tribunal de lo que ahora falsamente en su Resolución dice que no hicimos");[28] ("lo expuesto por la juez milita contra la verdad").[29] Tomadas en conjunto, estas expresiones disipan cualquier vacilación sobre el significado y propósito de las expresiones que realizó el promovido.

Pero hay más. En sus escritos, el licenciado Díaz Olivo también imputó a la Jueza Rosado Morales que:

1. Tenía un plan preconcebido para "viciar" y "mancillar" el proceso judicial, al afirmar en una moción que se torna "aúnmás [sic] urgente la necesidad institucional y jurídica de inhibir a la Juez Rosado del caso cuyo proceso ha advertido y reiterado que constitucionalmente habrá de viciar y mancillar";[30]

2. Procuró "vejar" deliberadamente los derechos constitucionales de la parte demandada al expresar que la Jueza Rosado "podrá seguir adelante con su plan preconcebido de vejar los derechos constitucionales de la parte demandada y así, fallar a favor del Sr. Torres Cintrón";[31]

3. Intentó celebrar un juicio "enmarcado en el entrampamiento procesal" cuando expresó que la Jueza Rosado Morales tenía "[e]l firme propósito […] de celebrar un juicio enmarcado en la sorpresa y entrampamiento procesal";[32]

4. Fue artífice de una emboscada, porque, a juicio del licenciado Díaz Olivo, "la Honorable Juez Rosado ha llegado al firme convencimiento de que seguirá adelante y que el demandado deberá afrontar las consecuencias de esta emboscada".[33]

También indicó que "[u]n juicio a desarrollarse de esta manera, resulta ser una farsa, una mueca burda a los nobles y altruistas preceptos sobre los cuales los padres fundadores edificaron nuestro sistema constitucional" y "[u]na deformación flagrante del derecho constitucional como la que

---

[26] *Íd.*
[27] *Íd.*
[28] *Íd.*
[29] *Íd.*, pág. 5
[30] *Urgente oposición a moción de desestimación y solicitud reiterada de inhibición*, pág. 1.
[31] *Íd.*, pág. 2.
[32] *Íd.*, pág. 4.
[33] *Íd.*, pág. 5.

pretende[] perpetuar la Juez Rosado contra el demandado Cruzado".[34]

De similar naturaleza fue la expresión que utilizó el licenciado Díaz Olivo para referirse al argumento que a su juicio la Jueza Rosado Morales invocaría para denegar la solicitud de aquel de conocer cierta prueba de la parte demandante, al decir que "[s]e invocará, que el arrojo y la disposición judicial a celebrar un juicio enmarcado en la emboscada y sorpresa mal intencionada, es ya la ley del caso […]".[35]

Asimismo, el licenciado Díaz Olivo caracterizó con tono cínico y de menosprecio el contenido de varias órdenes del Juez Administrador Regional al referirse a lo dispuesto por este como "la novel construcción lexicográfica del Juez Administrador"[36] y expresar que:

> La descomposición del significado de las palabras para la articulación de nuevas acepciones al castellano que se escenifica en la dependencia gubernamental que es esta Sala de Bayamón del Tribunal de Primera Instancia, se inserta y acomoda en el sin sentido que asfixia a[l] país en el manejo de sus asuntos públicos.[37]

Tales adjetivos y caracterizaciones son una muestra de expresiones innecesarias en la litigación. Estas abundan en los escritos que el licenciado Díaz Olivo presentó en este caso. Son ejemplo del tipo de lenguaje y estilo de argumentar que violan el deber de respeto que establece el Canon 9.

Nuestra desaprobación a las expresiones del licenciado Díaz Olivo no constituye un cuestionamiento de los planteamientos jurídicos que vertió en defensa de sus clientes. Tampoco constituyen un cuestionamiento de las discrepancias que tenía con las determinaciones de los jueces que intervinieron en el pleito. Ni siquiera es un rechazo a las denuncias que pudo haber hecho en los trámites del litigio en el que intervenía.

Nuestra determinación de amonestar al licenciado Díaz Olivo constituye, sencillamente, una desaprobación del lenguaje que usó en múltiples escritos, el que –además de ser totalmente innecesario para exponer sus preocupaciones y cuestionamientos en el pleito en el que comparecía como

---

[34] *Solicitud de inhibición*, 6 de abril de 2018, pág. 9.
[35] *Íd.*, pág. 11.
[36] Urgente moción en honor a la verdad y solicitud de ejercicio de prudencia, 25 de junio de 2018, pág. 5.
[37] *Íd.*

abogado- fue inflamatorio, irrespetuoso, menospreciativo, cínico, mordaz, altisonante y humillante.[38]

La representación legal del licenciado Díaz Olivo insiste en que las expresiones de este se enmarcan en su denuncia de irregularidades. Sin embargo, al tratar el tema del deber de respeto hacia los tribunales y compañeros de la profesión que establece el Código de Ética Profesional nunca hemos reconocido que ese deber cede cuando se pretende denunciar una irregularidad o formular una crítica contra los tribunales. Tampoco hemos reconocido una defensa de "proporcionalidad" de la conducta imputada como irrespetuosa frente a cualquier otro hecho como eximente de responsabilidad disciplinaria y ética cuando está implicado el Canon 9 de Ética Profesional. Adoptar tal posibilidad implicaría aceptar la idea errónea y peligrosa de que el deber de respeto y civilidad en la litigación está controlado por un interruptor que se puede encender o apagar por un abogado a conveniencia, solo por creer que está formulando una denuncia válida. En la ética profesional, el deber de respeto no tiene esa plasticidad acomodaticia.

Asimismo, aun cuando hemos expresado que la sinceridad del abogado o abogada que hace una denuncia contra algún juez es relevante al evaluar si ha transgredido los límites de comportamiento que establece el Canon 9, tal posibilidad no da un cheque en blanco para acudir al irrespeto o al lenguaje hiriente, altisonante y ofensivo.[39]

El Canon 9 no es un escudo contra la crítica a la labor judicial. Tampoco es una barrera para el abogado genuinamente preocupado por la buena marcha de los tribunales. El Canon 9 establece una pauta de comportamiento que, entre otras cosas, hace un llamado a la circunspección de la expresión en el contexto del litigio. Su razón de ser no es desalentar la crítica razonada sobre el trabajo de los jueces y juezas, a quienes se les ha dado el privilegio de rendir un servicio público que como tal está sujeto a la crítica ciudadana. Su finalidad es mantener la litigación, un proceso que por su naturaleza adversativa puede levantar pasiones, dentro de unos límites de respeto y de civilidad, sin los cuales la búsqueda de la verdad y la solución justa de las controversias sería más difícil y, posiblemente, inalcanzable. Según hemos señalado, "[l]a necesidad de que haya civilidad en el marco inherentemente contencioso del proceso adversativo, sugiere que los miembros de la clase togada hagan sus críticas al sistema en un tono profesional y cortés"). *In re Cardona*

---

[38] Véase *In re: Laborde Freyre*, 149 DPR 59, 64-65 (1999) (Opinión de Conformidad del Juez Asociado Señor Negrón García) ("al vocablo *amonestar* se lo atribuimos generalmente al significado de *advertir o prevenir* sobre una conducta que podría resultar en algún castigo o consecuencia adversa, de continuar realizándose en el futuro") (itálicas en el original y nota al calce suprimida).

[39] Véase *In re: Cardona Álvarez*, 116 DPR 895 (1986).

*Álvarez,* 116 DPR 895, 905 (1986) (traducción de *In re Snyder,* supra).

Por eso hemos afirmado que la opinión personal que un abogado tenga sobre el grado de eficiencia que desplieguen los tribunales no es materia sujeta a escrutinio bajo el Canon 9.[40] No obstante, "la excesiva y grosera manifestación de tal opinión no es conducta digna de un abogado" en los tribunales.[41] Asimismo, hemos manifestado que "[h]ay poca competencia profesional en el abogado que no sabe o no puede mantener el debate jurídico en el plano de altura y del buen decir que debe ser norma inalterable en el reclamo de justicia", pues "la grosería jamás debe hacer eco en el recinto del tribunal".[42]

Por último, recalcamos que lo resuelto al evaluar el referido formulado contra el licenciado Díaz Olivo es consistente con nuestros precedentes. En *In re: Pagán Hernández,*[43] suspendimos del ejercicio de la abogacía por seis meses a un abogado que usó "lenguaje impropio, indeseable y ofensivo, no s[o]lo a la dignidad y respeto de los tribunales, sino poco decoroso e inadecuado al ejercicio de la abogacía".[44] En *In re: Martínez, Jr.,*[45] suspendimos del ejercicio de la abogacía por tres meses a un abogado que imputó en un escrito dirigido a este foro introducir a los procedimientos lo que llamó "chantaje judicial". En *Pueblo v. Ruiz Negrón,*[46] rechazamos el uso de las expresiones "ritualismo procesal", "ejercicio abstracto" y "ejercicio fútil"[47] en referencia a los procedimientos judiciales allí implicados. En *In re: Crespo Enríquez,*[48] censuramos a un abogado por la manera en que se dirigió a un juez en un escrito pues, entre otras cosas, al abogar por la inhibición de este, le imputó negligencia crasa y posible conducta criminal infundada e irrespetuosamente. En *In re: Markus,*[49] censuramos severamente al abogado por el uso de expresiones que catalogamos como *"sumamente hirientes y ofensivas".*[50]

---

[40] *In re: Barreto Ríos,* 157 DPR 352 (2002).

[41] *Íd.,* pág. 358.

[42] *De la Torre v. Alcalde de Carolina,* 104 DPR 523, 529 (1976).

[43] 105 DPR 796 (1977).

[44] *Íd.,* págs. 801-802.

[45] 108 DPR 158 (1978).

[46] 113 DPR 17 (1982).

[47] *Íd.,* pág. 22.

[48] 147 DPR 656 (1999).

[49] 158 DPR 881 (2003).

[50] Las expresiones que motivaron censurar al abogado en esa ocasión fueron las siguientes:

> Meramente, a manera de ejemplo, encontramos frases, tales como: "[l]a mayoría de dos jueces que dictó la sentencia en este caso reseña que lo resolvió en seis (6) días laborables. Sin ánimo de sonar irrespetuoso, *el resultado así lo refleja"* (énfasis suplido); "[e]s una *sentencia leguleya"* (énfasis suplido); "[q]ue la opinión de la mayoría demuestra un grave desconocimiento de los hechos del caso era de esperar. Después

Finalmente, en *In re: Berríos Jiménez,*[51] amonestamos a un abogado que en un escrito de reconsideración en un proceso disciplinario contra un juez expresó que prefería "desistir del presente caso y dar por aplicable la Doctrina del toallazo".[52] Las expresiones que ocasionaron la amonestación del licenciado Díaz Olivo son análogas en tono y contenido a las antes transcritas, y representan una adición lamentable a ese catálogo.

IV.

Por los fundamentos expuestos, se declara NO HA LUGAR la solicitud de reconsideración que presentó el licenciado Díaz Olivo. En cuanto a la *Moción sobre representación legal* que presentó el licenciado Díaz Olivo, se provee ha lugar.

---

de todo, este tribunal apelativo ha pretendido fungir como tribunal de instancia, *pero sin pasar el trabajo de cumplir con el procedimiento y celebrar un juicio*" (énfasis suplido); "[t]an grave como el desconocimiento de los hechos es el *profundo desentendimiento* de los procesos parlamentarios y de las normas legales y constitucionales que aplican en la Rama Legislativa" (énfasis suplido); "[l]o aseverado [por la mayoría del tribunal apelativo] *constituye una aberración jurídica*" (énfasis suplido); "[e]sto abona sobre el problema de adjudicar a destiempo. Si no se han afinado las controversias mediante el proceso adversativo, lo único que puede hacer un tribunal, especialmente a nivel apelativo, *es 'dar palos a ciegas'*" (énfasis suplido); "[p]rocesos como el que nos ocupa, que tienen siglos de evolución, *no pueden ser atendidos como si fueran un cobro de Regla 60 o un divorcio por trato cruel*" (énfasis suplido); "[u]no de los *aspectos más leguleyos de la opinión de la mayoría*, es el que se refiere a los términos para completar investigaciones legislativas" (énfasis suplido); "[c]omo ocurre con el resto de la sentencia, *tales opiniones no aparecen sostenidas por autoridad alguna*" (énfasis suplido); "[a] continuación, *algunas de las conclusiones absurdas* a las que llega la mayoría de este panel" (énfasis suplido); "*[l]a óptica de la sentencia*, como la del peticionario, es la de una Regla 4 de Procedimiento Civil *en su manifestación más retrógrada*" (énfasis suplido); "[c]omo ocurre a través de toda la sentencia, *el tribunal adjudica como cierto el disparate alegado por el peticionario*" (énfasis suplido); "[e]n este caso, la sentencia del tribunal ha ignorado por completo las reglas de la Cámara de Representantes de Puerto Rico y las normas de Derecho Parlamentario. Las ha ignorado como si no existieran *y su ignorancia ha sido upina* [sic] por lo menos por dos razones" (énfasis suplido); "[s]e impone que este Tribunal, *con la misma prontitud con la que paralizó los procedimientos*, reconsidere su sentencia del 20 de octubre de 2000, la revoque por completo y disponga lo necesario para agilizar la expedi[c]ión de la orden de citación al Sr. Rubén Vélez, *todo ello en compensación por la demora que ha* ocasionado con dicha sentencia *y en reparación parcial al daño que le ha ocasionado* a las prerrogativas constitucionales de la Cámara de Representantes de Puerto Rico". *Íd.,* págs. 885-887 (notas al calce omitidas).

[51] 180 DPR 474 (2010).
[52] *Íd.*, pág. 475.

Publíquese.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Estrella Martínez reconsiderarían. El Juez Asociado señor Kolthoff Caraballo está inhibido. El Juez Asociado señor Colón Pérez no intervino.


                          José Ignacio Campos Pérez
                          Secretario del Tribunal Supremo